



MEMBER FDIC
## BUSINESS CASHLINE CREDIT AGREEMENT

| | | | |
|---|---|---|---|
| Ceiling Amount | $100,0000.00 | York, | Maine |
| Expiration Date: | October 5, 2002 | October 5, 2001 | |
| Account Number: | 0000001 | | |

PEOPLES HERITAGE BANK, N.A., (hereinafter called the "Lender"), by its acceptance hereof, commits itself subject to the terms of this Business CashLine Credit Agreement (hereinafter called the "Agreement") to make Loans to the undersigned Borrower up to a maximum aggregate principal amount at any one time outstanding of <u>One Hundred Thousand and 00/100 dollars ($100,000.00)</u> (hereinafter called the "Ceiling Amount"), which the Borrower may borrow in full or in part, repay in full or in part, and reborrow, in accordance with the terms of this Agreement. This commitment shall expire on the first to occur of the following: (a) Lender's Demand for payment of all Advances outstanding hereunder, (b) the occurrence of an event of default defined in paragraph 11 below, or (c) the Expiration Date set forth above. In consideration of this commitment by Lender, the Borrower (and if more than one Borrower, each of them jointly and severally) agrees with the Lender as follows:

### LOAN TERMS:

1. The Borrower promises to pay to Lender, ON DEMAND, all Advances outstanding under this Agreement (including any Advances which may, in Lender's sole discretion, be made in excess of the Ceiling Amount), together with interest thereon at the rates provided below, at any of Lender's banking offices. Interest shall continue to accrue on all Advances outstanding under this Agreement until all Advances have been repaid in full and the Lender's commitment to advance funds hereunder has terminated.

2. The interest to be paid on all amounts advanced hereunder (collectively called "Advances") shall be computed from the date of each Advance at a fluctuating interest rate equal to the Base Rate, as it may vary plus <u>Two and One Half</u> Percent (<u>2.50</u>%) per annum. The "Base Rate" shall mean the Prime Rate as published in the Money rates section of the *Wall Street Journal*. Lender shall not be required to notify Borrower of adjustments in said variable interest rate and such adjustments shall become effective immediately upon any change in such Base Rate. In the event that the Prime Rate shall no longer be available, Lender shall designate a comparable base rate and spread in substitution therefor.

3. Interest on outstanding Advances under this Agreement shall be paid monthly, commencing on <u>Novmeber 1, 2001</u>, and continuing on the first day of each succeeding month thereafter (each called the "Interest Payment Date").

4. All advances outstanding under this Agreement, together with interest thereon, shall be due and payable in full, without notice or demand, on the Expiration Date.

5. All payments shall be applied first to accrued interest, and then to late fees, and then to outstanding principal, until paid in full. All interest hereunder shall be computed on the basis of the actual number of days elapsed over a 360-day year. If any payment is not received within fifteen (15) days of when due, then Borrower shall pay to Lender a late payment fee of six percent (6.0%) of the amount of such delinquent payment.

6. DEFAULT INTEREST RATE. Lender shall have the right to charge interest on the unpaid principal balance hereof at an interest rate of six percent (6%) per annum in excess of the rate of interest otherwise payable as provided herein, for any period after an event of default (as defined below) shall have occurred and until the same shall have been cured or expressly waived by Lender in writing.

7. The Borrower hereby requests and authorizes the Lender to:

(a) Establish an account (the "Account") in the name of Borrower and, without inquiry and without regard to application of the proceeds thereof, pay or apply any or all Account checks executed by the Borrower which may be deposited with or delivered or transferred to the Lender (including any such check drawn to the individual order of any officer(s) or agent(s) of Borrower or any other person or entity for the personal credit of any such person, officer or agent) and charge Borrower's Account in respect thereof or otherwise disburse sums as requested in Borrower's properly executed Advance Request Form(s) received by Lender, in such form as may be required by Lender, or otherwise as requested orally by Borrower as long as such oral requests are permitted by Lender. Lender shall not be liable for any disposition which any person, officer or agent may make of all or part of the proceeds any Account check or other Advance, including any disposition for the personal account or benefit or in payment of any individual obligation to Lender of any such person, officer or agent. Borrower agrees not to cause the amount outstanding under the Account to exceed the Ceiling Amount; if said amount outstanding reaches the Ceiling Amount, Lender may elect to stop making advances and return all items drawn or written over the Ceiling Amount.

(b) Charge and bill Borrower for interest due hereunder as of each succeeding Interest Payment Date or, at the option of Lender, charge any of Borrower's other checking accounts for interest when due hereunder.

(c) Record all Advances, payments, interest, other charges and any other items, properly chargeable or creditable in accordance with customary accounting practice, arising out of this Agreement to Borrower's Account maintained by Lender. Lender shall render a monthly invoice (which may be included as part of the monthly statement issued by Lender with respect to Borrower's existing checking account) of interest due, the outstanding principal balance and any other charges, and all items shown thereon shall be considered correct, complete, accepted by and conclusively binding upon Borrower unless Borrower gives Lender written notice of exceptions within thirty (30) days of receipt of said invoice.

(d) The line of credit established under this Agreement shall be paid down to and maintained at not more than $0.00 for a minimum of thirty (30) consecutive days during each fiscal year of the Borrower (or each calendar year if the Borrower does

not have a fiscal year), beginning with the fiscal year or calendar year during which this Agreement is executed provided that if on the date of this Agreement there are less than ninety (90) days remaining in the Borrower's fiscal year (or the calendar year if Borrower does not have a fiscal year) then the requirement set forth in this paragraph shall first apply during the next upcoming fiscal year (or calendar year).

### SECURITY:

8. This Agreement is secured and/or guaranteed pursuant to the terms and conditions of this Agreement and of the following documents which, unless otherwise noted below, are dated on or about the date of this Agreement (check as many as apply):

- ☐ a mortgage and security agreement on property located at _____.
- ☐ a collateral assignment of leases and rentals relating to the property described in said mortgage and security agreement.
- ☐ a security agreement respecting personal property, namely (but without limitation): _____.
- ☒ a guaranty or guaranties executed by **York Street Trust, Lorri Petrone Trustee**.
- ☒ other: **Unsecured**.

This Agreement may also be secured by documents executed in the future by Borrower or by any Guarantor. If checked here ☐, Advances under this Agreement are secured as future advances pursuant to the terms of an existing Mortgage and Security Agreement from Borrower to Lender dated _____, and recorded in the _____ County Registry of Deeds in Book _____, Page _____. This Agreement is also secured by existing security agreements, guaranties or other documents given by Borrower or Guarantor if the provisions of such existing documents state that they shall secure future obligations or liabilities of Borrower or any Guarantor to Lender. All documents which secure or guaranty this Agreement, whether executed prior hereto, on even date herewith or in the future, are hereinafter called "Security Documents."

Borrower hereby grants to Lender, as security for the payment and performance of this Agreement, a continuing lien on and security interest in any and all deposit accounts and funds on deposit therein (general or specific, time or demand, regardless of maturity or the bank branch where the deposit accounts are held) now or hereafter held by Lender and other sums credited by or due from Lender to Borrower or subject to withdrawal by Borrower, whether or not any other person or persons could also withdraw money therefrom (collectively hereinafter called the "Deposits"). Without limiting the remedies provided to Lender under this Agreement, after any event of default, Lender may "freeze" or place a "hold" on any Deposits by suspending Borrower's right to withdraw the Deposits and may also set off any Deposits (including those previously frozen or placed on hold) against any amounts payable by Borrower under this Agreement or any other Liabilities. Failure of Lender to take necessary steps to preserve rights against any party with respect to any property in its possession shall not be deemed a failure to exercise reasonable care.

9. **COVENANTS**:

(a) As a material covenant hereof, Borrower shall at all times maintain insurance on any property serving as collateral against such risks and in such form and amounts as the Lender may require; in any event and without specific request, Borrower shall maintain insurance against fire, including so-called extended coverage, theft, flood (if the property is located in any federally designed "special hazard area"), and other risks customarily insured against by persons in Borrower's business for the full insurable value of the collateral. All such insurance shall be written by such companies as the Lender may approve, with loss thereon payable to Lender and Borrower. All such policies of insurance shall provide for at least thirty (30) days' notice to Lender of cancellation, non-renewal or change in coverage, and such policies or evidence thereof shall be delivered to the custody of Lender.

(b) As a material covenant hereof, Borrower shall not sell, dispose of or transfer any of its business assets, including assets serving as collateral.

(c) Borrower shall maintain Borrower's primary deposit relationship with Lender.

(d) Lender reserves the right to require Borrower and/or Guarantor(s) (if any) to provide Lender with financial statements and copies of tax returns at any time during the course of this or any other obligation upon request of Lender. Such statements are to include data as of the most recent fiscal year end, interim financial information as needed and other supporting financial information including but not limited to personal financial statements. If the foregoing information is not provided as requested, Borrower will be in default hereunder, under the Loan Documents (if any) and/or under any documents governing or securing the Note (if any) and the default interest rate will be applied to all amounts owing to Lender by Borrower.

(e) All of the undersigned authorize Lender to obtain credit reports (including personal credit report(s)) and/or to make employment or investigation inquiries deemed necessary by Lender in connection with any application for credit or its renewal. If any of the undersigned make an inquiry of Lender, the inquiror will be informed whether or not a credit report was requested, and if a report was requested, will be informed of the name and address of the credit reporting agency that furnished the report. The undersigned understand and agree that the Lender can furnish information concerning the undersigned and this business account to credit reporting agencies and others who may properly receive that information.

(f) Borrower shall provide and maintain throughout the term of the Loan a life insurance policy in a face amount equal to $N/A, payable to Lender on the life of **N/A**. Lender shall further require an assignment of the Borrower's rights in the policy, together with an acknowledgement by the life insurance company of receipt of the assignment and an indication by the company that the assignment is a first lien on the policy.

### DEFAULT:

10. All Advances outstanding hereunder, together with all interest and other charges, as applicable, shall immediately become due and payable, and the Lender's commitment to make further Advances to the Borrower under this Agreement shall automatically and immediately cease and be terminated, all without notice or demand of any nature whatsoever, upon the occurrence of any one or more of the following events, each of which shall constitute an event of default hereunder: (a) the insolvency of the Borrower or any Guarantor, or (b) the making of any assignment for the benefit of creditors of the Borrower or any Guarantor, or (c) the issuance or filing of any attachment, levy, or other judicial process on or against any of the Borrower's or any Guarantor's assets, or (d) the appointment of a receiver, trustee or custodian for all or any portion of the property of the Borrower or any Guarantor, or (e) the commencement of any proceedings under any state or federal bankruptcy or insolvency law or under laws for

relief of debtors, by or against the Borrower or any Guarantor, or (f) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Borrower or any Guarantor as, in the opinion of the Lender, materially impairs the collateral (if any) or the prospect of repayment of any amounts outstanding hereunder, or (g) the death, incompetency, dissolution, business failure (which term includes, without limitation, the cessation of normal business operations) or termination of existence of the Borrower or any Guarantor, or (h) the failure of the Borrower or any Guarantor to pay their respective debts as they mature, or (i) any representation or statement made or furnished to Lender by or on behalf of any Borrower or Guarantor is false or misleading in any material respect, or (j) any default in the payment of any sums due under this Agreement when due (including failure to pay all outstanding Advances on demand) or default by the Borrower or any Guarantor in performance of any covenant or other obligation under this Agreement (including covenants regarding financial reporting), or (k) default beyond any applicable cure period in the payment, satisfaction or performance by the Borrower or any Guarantor of any condition or obligation under any of the Security Documents or under any documents executed in connection with any other Liabilities of the Borrower or any Guarantor to the Lender. The Borrower shall immediately inform Lender of any occurrence which would cause such immediate termination of Lender's agreement to make Advances hereunder or which would cause any prior information provided Lender to become inaccurate or misleading.

Because all amounts due hereunder are payable on demand for any reason whatsoever or no reason, full and immediate payment of all amounts due hereunder may be demanded at any time at the sole discretion of Lender even though the terms of this Agreement provide for payments until demand, and even though other grounds are provided in this Agreement as to when such full payment may be accelerated or demanded. Any such demand by Lender of all amounts due hereunder also shall cause the immediate termination of Lender's agreement to make Advances hereunder. Delay or failure on the part of Lender in exercising these or any other rights hereunder shall not operate as a waiver of these or any other rights under this Agreement. After due date, acceleration or demand of all amounts due hereunder, acceptance by the Lender of any payment representing less than the total balance of all such amounts shall not constitute a waiver or relinquishment of Lender's right to full and immediate payment of all remaining amounts due hereunder. Until termination of Lender's agreement to make Advances hereunder, and thereafter until all amounts due hereunder are paid in full, this Agreement and all Security Documents securing, guaranteeing or otherwise relating to this Agreement and shall continue in full force and effect, except for Lender's agreement to make Advances if that has been terminated, even though from time to time the balance of amounts due hereunder is reduced to zero.

In addition to all other defaults provided in this Note, it shall be a default hereunder if there shall occur a default in any obligation of payment or performance to Lender under any other Note or other evidence of indebtedness made and given by Borrower or Guarantor and held by Lender, now existing or hereafter arising ("Other Borrower or Guarantor Notes") or under any other document or instrument securing or governing Other Borrower or Guarantor Notes. Any default hereunder or under any document securing or governing this Note shall constitute a default under each Other Borrower or Guarantor Note.

### REMEDIES:
11. Upon the occurrence of any event of default under this Agreement the Lender shall have all rights and remedies available under this Agreement, any of the Security Documents and pursuant to applicable law. The Lender shall not be required to pursue or to exhaust its remedies against the Borrower, or its successors, or against any other party liable for payment hereof, whether maker, Guarantor, or otherwise, or against any property or assets mortgaged or pledged as security herefor, but upon nonpayment or nonperformance hereof may immediately demand and enforce payment and performance from any one or more of Borrower(s) or Guarantor(s), or may seek to realize upon the value of any collateral, without the necessity of joining any other Borrower(s) or Guarantor(s), and in each case without any requirement of first seeking to collect the debt evidenced by this Agreement from any other source. Each Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement may be brought in any state or federal court in the State of Maine, at the election of Lender. Any litigation by any Borrower or Guarantor against Lender shall be brought and maintained in the State of Maine. By the execution and delivery hereof, each Borrower hereby irrevocably submits to the nonexclusive jurisdiction of any state or federal court located within the State of Maine and to the jurisdiction of any state, federal or other court of the United State of America, the State of Maine, or any other state, district, commonwealth, territory, county, province or country in which assets owned by Borrower (including those owned jointly or in common with others) are or may be located. Borrower irrevocably agrees that in addition to any methods of service provided for under applicable law, all service of process in any such legal action or proceeding may be made by certified mail, return receipt requested to the Borrower's address pursuant to paragraph 14 below. Each Borrower and each Guarantor shall be liable for, and hereby agrees to pay, upon demand, any and all costs or expenses of any nature whatsoever incurred by the Lender in endeavoring to collect or enforce this Agreement against any party including, without limiting the generality of the foregoing, reasonable attorneys' fees and expenses, including all reasonable fees and expenses incurred in any bankruptcy, reorganization or insolvency proceeding. The Lender shall not be deemed to have waived any of its rights or remedies under this Agreement or under any of the Security Documents by any act, delay, omission or failure or refusal to exercise any of such rights or remedies. No waiver by Lender of any kind shall be valid unless it is in writing and signed by an officer of the Lender, and then only to the extent specifically stated. All of the rights and remedies of the Lender shall be cumulative and not exclusive, and may be exercised on any one or more occasions either singularly or concurrently.

### WAIVERS:
12. The Borrower and each Guarantor hereby (1) waive presentment, notice of dishonor, protest, notice of protest, and any and all other notices of any nature whatsoever in connection with the delivery, acceptance, performance, default or enforcement of this Agreement and (2) consent and agree that the Lender may at any time and from time to time without affecting the liability of Borrower or of any Guarantor or of any other person (excepting any person expressly released in writing) for payment of the debt evidenced by this Agreement or for performance of any obligation contained herein, and without affecting Lender's rights with respect to any security not expressly released in writing: (a) release any person liable for all or any part of the indebtedness or for performance of any obligation; (b) amend this Agreement to change the Expiration Date, the Ceiling Amount or the interest rate: (c) grant any releases, compromises or indulgences with respect to this Agreement or any extensions, renewals, or amendments hereof or substitutions herefor or with respect to any collateral securing the payment of sums outstanding under this Agreement to any party primarily or secondarily liable hereunder, or (d) modify the provisions of this Agreement all without notice to or consent of any Borrower or any Guarantor; (3) waive all recourse to suretyship and guarantorship defenses generally; and (4) waive the right to direct the application of any payment hereunder. BORROWER HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS, WHETHER ARISING UNDER THE CONSTITUTIONS OF THE UNITED STATES OR OF ANY STATE, ANY RULES OF CIVIL PROCEDURE, COMMON OR STATUTORY LAW, OR OTHERWISE, TO DEMAND A TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM INVOLVING LENDER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS NOTE OR ANY OF THE SECURITY DOCUMENTS.

BORROWER AND ALL GUARANTORS AGREE THAT ANY AND ALL DISPUTES OR CLAIMS OF BORROWER OR GUARANTORS AGAINST THE BANK OR ITS AGENTS ARISING OUT OF OR RELATING TO THIS COMMITMENT, THE LOAN, THE LOAN DOCUMENTS, ANY COLLATERAL SECURING THE LOAN OR THE CONDUCT OF THE BANK OR ITS

AGENTS SHALL BE RESOLVED SOLELY BY MEANS OF BINDING ARBITRATION CONDUCTED IN PORTLAND, MAINE IN ACCORDANCE WITH THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION GOVERNING COMMERCIAL ARBITRATION.

**MISCELLANEOUS:**

13. If, for any reason, any payment to Lender applied to amounts outstanding hereunder is required to be refunded by Lender to Borrower or to any Guarantor or turned over by Lender to any other person or entity, Borrower and each Guarantor agree to pay to Lender on demand an amount equal to the payment so refunded or turned over by Lender and the liability of Borrower and each Guarantor shall not be treated as having been discharged by the original payment to Lender giving rise to such refunded or turned over payment.

14. All notices, demands or requests provided for or permitted to be given pursuant to this Agreement must be in writing and shall be given by personal delivery or by depositing the same in the United States mail, post paid and certified, return receipt requested at the address set forth below, as such addresses may be changed by notice given to the other party.

Lender's Address (for purposes of demanding termination of security interests created hereby):
Peoples Heritage Bank, N.A.
One Portland Square
P.O. Box 9540
Portland, ME 04112-9540
ATTN: Commercial Loan Administration Manager

Lender's Address (for all other purposes):
Peoples Heritage Bank, N.A.
One Portland Square
P.O. Box 9540
Portland, ME 04112-9540
ATTN: Commercial Loan Dept.

Borrower's Address:
Mary Rivers
dba Rivers by the Sea
PO Box 549
York, ME 03910

15. Each Borrower and each Guarantor shall be jointly and severally liable to the Lender under this Agreement and each Borrower has subscribed his/her/its name hereto without condition that any other person or entity shall sign or become bound hereunder and without any other conditions whatever. Any Borrower that is a corporation or other legal entity hereby warrants that it is validly formed, in existence and in good standing at the present time, with all necessary authority to enter into, execute and deliver this Agreement. No invalidity or unenforceability of any portion or obligation of this Agreement shall affect the validity or enforceability of the remaining portions or obligations hereof. This Agreement and all actions taken pursuant hereto shall be governed by, and interpreted and construed in accordance with, the laws of the State of Maine. This Agreement evidences a loan for business and commercial purposes and not for personal, household, or family purposes. If Borrower is an individual, Borrower represents that it is voluntarily acting as a sole proprietorship and is not acting in an individual capacity in connection with this loan. The use of captions in this Agreement is for purposes of convenience only, and no caption shall affect the meaning of this Agreement. As used herein, the word: (1) Liabilities means any and all liabilities, indebtedness, and obligations of each Borrower and Guarantor to Lender of any nature whatsoever, now existing or hereafter arising, due or to become due, absolute or contingent, direct or indirect and whether joint, several, or joint and several; (2) Guarantor shall mean and include each endorser, surety, guarantor or other party primarily or secondarily liable to the Lender with respect to this Agreement other than the Borrower; (3) Borrower shall mean each undersigned party; and (4) Lender shall mean Peoples Heritage Bank, N.A. and each future assignee of this Agreement. This Agreement may not be assigned by Borrower. This Agreement and the provisions hereof shall be binding upon the heirs, executors, administrators, successors, legal representatives and assigns of the Borrower and each Guarantor and shall inure to the benefit of the Lender, its successors, legal representatives and assigns. This Agreement is intended to take effect as a sealed instrument.

PEOPLES HERITAGE BANK, N.A.

_____     By: _____
Witness                          Jerry Bazata, Vice President

_____     _____
Witness                          Mary Rivers

Each of the above Borrower(s) is jointly and severally liable under this Business CashLine Credit Agreement

The undersigned acknowledges that he/she/it is a guarantor of the Note pursuant to a Guaranty agreement in favor of the Lender.

York Street Trust

_____     By: _____
Witness                          Lorri Petrone, Trustee

i:\office\shared\loandocs\small biz\small biz cashline.doc   Revised 8/1/2001