**Bank**





## MODIFICATION AGREEMENT

This MODIFICATION AGREEMENT is entered into as of **July 1, 2010**, between Mary Rivers, an individual, with an address of 27 Brickyard Court, Suite 6, York, Maine 03909 (the "Borrower") and TD Bank, N.A., a National Association with an address of PO Box 9540, One Portland Square, Portland, Maine 04112-9540 (the "Bank"), formerly known as TD Banknorth, N.A., f/k/a Banknorth, N.A., successor by merger to Peoples Heritage Bank, N.A., (collectively, "PREDECESSOR").

WHEREAS, the Bank established a revolving line of credit (the "Revolving Loan") for Borrower respecting which Bank agreed to make advances to Borrower until **May 5, 2004** (the "Expiration Date") upon Borrower's request, but subject to the terms and conditions set forth in various loan documents, of up to **One Hundred Thousand Dollars and Zero Cents ($100,000.00)** (the "Revolving Loan Amount");

WHEREAS, the Revolving Loan is evidenced by that certain Business Cashline Credit Agreement, dated **October 5, 2001** (as previously amended, modified or supplemented, the "Note"), by the Borrower in favor of the Bank in the face amount of the Revolving Loan Amount;

WHEREAS, notwithstanding that the Note is due and payable ON DEMAND, the Bank's agreement to advance funds respecting the Note expires on the Expiration Date and there shall be no further advances respecting the Note unless the Bank agrees in writing in the sole discretion of the Bank to extend the Expiration Date;

WHEREAS, pursuant to one or more previous amendments, modifications or supplements the original principal amount of the Note was changed to **$150,000.00**;

WHEREAS, as further security for the Loan, York Street Trust issued a guaranty, dated **October 5, 2001** (as previously amended, modified or supplemented, the "York Street Trust Guaranty"), pursuant to which York Street Trust guaranteed to the Bank the payment and performance of all of the Borrower's obligations with respect to the Loan and the other Loan Documents (as hereinafter defined);

WHEREAS, the Note and the York Street Trust Guaranty and all other documents and instruments executed in connection with or relating to the Loan are referred to herein, collectively, as the "Loan Documents"; and all collateral granted to the Bank to secure the Loan is referred to herein, collectively, as the "Collateral";

WHEREAS, the Bank is the successor in interest to PREDECESSOR with respect to the Loan and the Loan Documents, is the owner and holder of the Loan and the Loan Documents and, as such, the Borrower is indebted to the Bank therefor and thereunder;

WHEREAS, the Borrower and the Bank have agreed to convert the Revolving Loan to a term loan and that as of the date of this Agreement there shall be no further advances respecting the Revolving Loan and all amounts outstanding respecting the Revolving Loan shall be repaid in accordance with this Agreement;

WHEREAS, the Borrower and the Bank have agreed to modify the Loan and the Loan Documents in accordance with the terms of this Agreement.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Bank and the Borrower mutually agree as follows:

### 1. MODIFICATION

1.1    Recitals and Representations Accurate. The above recitals are hereby made a part of this Agreement and the Borrower acknowledges and agrees that each of the recitals is true and correct.

1.2    Ratification. All of the terms, covenants, provisions, representations, warranties, and conditions of the Loan Documents, as amended or modified hereby, are ratified, acknowledged, confirmed, and continued in full force and effect as if fully restated herein.

1.3    Conversion to Term. Effective the date of this Agreement, notwithstanding anything to the contrary in the Loan Documents, there shall be no further advances respecting the Revolving Loan and such Revolving Loan is hereby converted to a term loan in accordance with the terms of this paragraph. Borrower hereby agrees to (a) pay to the Bank 24 monthly installments comprised of principal and interest in the amount of **$1,249.39** on the day of each month on which payments are due in accordance with the terms of the Note commencing **August 1, 2010**, and (b) make a final payment on **August 1, 2012** (the "New Maturity Date") consisting of all unpaid principal, accrued interest thereon and all other fees, costs and expenses due and owing the Bank under the Loan Documents.

1.4    Events of Default. The Bank and the Borrower hereby agree that notwithstanding any reference in the Loan Documents that the Revolving Loan shall be due and payable ON DEMAND, effective as of the date of this Agreement, the Revolving Loan, as modified hereby, shall be due and payable on or before the New Maturity Date. In addition, at the option of the Bank, the Note shall

Loan Number - Note 1: 01539240001

become immediately due and payable without notice or demand upon the occurrence at any time of any of the following events of default (each, an "Event of Default"): (1) default of any liability, obligation, covenant or undertaking of the Borrower or any endorser or any guarantor of the Note to the Bank, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Borrower or any endorser or any guarantor of the Note under any other Loan Document or any other agreement with the Bank continuing for 15 days with respect to any default (other than with respect to the payment of money for which there is no grace period); (2) failure of the Borrower or any endorser or any guarantor of the Note to maintain aggregate collateral security value satisfactory to the Bank continuing for 15 days; (3) default of any material liability, obligation or undertaking of the Borrower or any endorser or any guarantor of the Note to any other party continuing for 15 days; (4) if any statement, representation or warranty heretofore, now or hereafter made by the Borrower or any endorser or any guarantor of the Note in connection with this Agreement, the Note or any other Loan Document or in any supporting financial statement of the Borrower or any endorser or any guarantor of the Note shall be determined by the Bank to have been false or misleading in any material respect when made; (5) if the Borrower or any endorser or any guarantor of the Note is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property; (6) the death of the Borrower or any endorser or any guarantor of the Note and, if the Borrower or any endorser or any guarantor of the Note is a partnership or limited liability company, the death of any partner or member; (7) the institution by or against the Borrower or any endorser or any guarantor of the Note of any proceedings under the Bankruptcy Code 11 USC §101 et seq. or any other law in which the Borrower or any endorser or any guarantor of the Note is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Borrower or any endorser or any guarantor of the Note of an assignment for the benefit of creditors or the granting by the Borrower or any endorser or any guarantor of the Note of a trust mortgage for the benefit of creditors; (8) the service upon the Bank of a writ in which the Bank is named as trustee of the Borrower or any endorser or any guarantor of the Obligations; (9) a judgment or judgments for the payment of money shall be rendered against the Borrower or any endorser or any guarantor of the Note, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution; (10) any levy, lien (including mechanics lien), seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Borrower or any endorser or any guarantor of the Note; (11) the termination or revocation of any guaranty of the Note; or (12) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Borrower or any endorser or any guarantor of the Note, or the occurrence of any other event or circumstance, such that the Bank, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Borrower or any endorser or any guarantor of the Note to the Bank has been or may be impaired.

1.5   Representations and Warranties. The Borrower hereby represents and warrants to the Bank that:

(a)   The person executing this Agreement is duly authorized to do so and to bind the Borrower to the terms hereof;

(b)   Each of the Loan Documents is a valid and legal binding obligation of the Borrower, enforceable in accordance with its terms, and is not subject to any defenses, counterclaims, or offsets of any kind;

(c)   All financial statements delivered to the Bank were true, accurate and complete, in all material respects, as of the date of delivery to the Bank;

(d)   Since the date of the Loan Documents there has been no material adverse change in the condition, financial or otherwise, of the Borrower, except as disclosed to the Bank in writing;

(e)   There exists no action, suit, proceeding or investigation, at law or in equity, before any court, board, administrative body or other entity, pending or threatened, affecting the Borrower or its property, wherein an unfavorable decision, ruling or finding would materially adversely affect the business operations, property or financial condition of the Borrower; and

(f)   There exists no event of default, or other circumstance that with the passage of time or giving of notice or both will become an event of default, under any of the Loan Documents.

1.6   Interest, Fees, Costs and Expenses. The Borrower shall, simultaneously with the execution of this Agreement, pay to the Bank all accrued interest owing on the Loan as of the date of this Agreement together with all fees, costs and expenses due and owing to the Bank by the Borrower under the Loan Documents.

## 2. MISCELLANEOUS

2.1   Set-Off. The Borrower hereby grants to the Bank a continuing lien and security interest in any and all deposits or other sums at any time credited by or due from the Bank to the Borrower and any cash, securities, instruments or other property of the Borrower in the possession of the Bank, whether for safekeeping or otherwise, or in transit to or from the Bank (regardless of the reason the Bank had received the same or whether the Bank has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of the Borrower to the Bank and such deposits and other sums may be applied or set off against such liabilities and obligations of the Borrower to the Bank at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Bank.

2.2   Release of the Bank. The Borrower hereby confirms that as of the date hereof it has no claim, set-off, counterclaim, defense, or other cause of action against the Bank including, but not limited to, a defense of usury, any claim or cause of action at common law, in equity, statutory or otherwise, in contract or in tort, for fraud, malfeasance, misrepresentation, financial loss, usury, deceptive trade practice, or any other loss, damage or liability of any kind, including, without limitation, any claim to exemplary or punitive damages arising out of any transaction between the Borrower and the Bank. To the extent that any such set-off, counterclaim, defense, or other cause of action may exist or might hereafter arise based on facts known or unknown that exist as of this date, such set-off,

Loan Number - Note 1: 01539240001

counterclaim, defense and other cause of action is hereby expressly and knowingly waived and released by the Borrower. The Borrower acknowledges that this release is part of the consideration to the Bank for the financial and other accommodations granted by the Bank in this Agreement.

2.3   Costs and Expenses. The Borrower shall pay to the Bank on demand any and all costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements, court costs, litigation and other expenses) incurred or paid by the Bank in establishing, maintaining, protecting or enforcing any of the Bank's rights or any of the obligations owing by the Borrower to the Bank, including, without limitation, any and all such costs and expenses incurred or paid by the Bank in defending the Bank's security interest in, title or right to, the Collateral or in collecting or attempting to collect or enforcing or attempting to enforce payment of the Loan.

2.4   Indemnification. The Borrower shall indemnify, defend and hold the Bank and its directors, officers, employees, agents and attorneys (each an "Indemnitee") harmless against any claim brought or threatened against any Indemnitee by the Borrower or any guarantor or endorser of the obligations of the Borrower to the Bank, or any other person (as well as from attorneys' fees and expenses in connection therewith) on account of the Bank's relationship with the Borrower, or any guarantor or endorser of the obligations of the Borrower to the Bank (each of which may be defended, compromised, settled or pursued by the Bank with counsel of the Bank's election, but at the expense of the Borrower) except for any claim arising out of the gross negligence or willful misconduct of the Bank. The within indemnification shall survive payment of the obligations of the Borrower to the Bank, and/or any termination, release or discharge executed by the Bank in favor of the Borrower.

2.5   Severability. If any provision of this Agreement or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Agreement (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

2.6   Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute but one agreement.

2.7   Bank's Predecessor(s). All references in the Loan Documents to Bank, formerly known as TD Banknorth, N.A., f/k/a Banknorth, N.A., successor by merger to Peoples Heritage Bank, N.A., shall hereafter mean TD Bank, N.A., its successors and assigns. The Bank's address, for all purposes, shall be as set forth in the first paragraph of this Agreement.

2.8   Complete Agreement. This Agreement and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

2.9   Binding Effect of Agreement. This Agreement shall be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and the Bank shall be entitled to rely thereon) until released in writing by the Bank. The Bank may transfer and assign this Agreement and deliver the Collateral to the assignee, who shall thereupon have all of the rights of the Bank; and the Bank shall then be relieved and discharged of any responsibility or liability with respect to this Agreement and the Collateral. Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Agreement or the other Loan Documents.

2.10   Further Assurances. The Borrower will from time to time execute and deliver to the Bank such documents, and take or cause to be taken, all such other further action, as the Bank may request in order to effect and confirm or vest more securely in the Bank all rights contemplated by this Agreement (including, without limitation, to correct clerical errors) or to vest more fully in or assure to the Bank the security interest in the Collateral or to comply with applicable statute or law and to facilitate the collection of the Collateral (including, without limitation, the execution of stock transfer orders and stock powers, endorsement of promissory notes and instruments and notifications to obligors on the Collateral). To the extent permitted by applicable law, the Borrower authorizes the Bank to file financing statements, continuation statements or amendments without the Borrower's signature appearing thereon, and any such financing statements, continuation statements or amendments may be signed by the Bank on behalf of the Borrower, if necessary, and may be filed at any time in any jurisdiction. The Bank may at any time and from time to time file financing statements, continuation statements and amendments thereto which contain any information required by the Maine Uniform Commercial Code, Title 11 M.R.S.A. as amended from time to time (the "Code") for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether the Borrower is an organization, the type of organization and any organization identification number issued to the Borrower. The Borrower agrees to furnish any such information to the Bank promptly upon request. In addition, the Borrower shall at any time and from time to time take such steps as the Bank may reasonably request for the Bank (i) to obtain an acknowledgment, in form and substance satisfactory to the Bank, of any bailee having possession of any of the Collateral that the bailee holds such Collateral for the Bank, (ii) to obtain "control" (as defined in the Code) of any Collateral comprised of deposit accounts, electronic chattel paper, letter of credit rights or investment property, with any agreements establishing control to be in form and substance satisfactory to Bank, and (iii) otherwise to insure the continued perfection and priority of the Bank's security interest in any of the Collateral and the preservation of its rights therein. The Borrower hereby constitutes the Bank its attorney-in-fact to execute, if necessary, and file all filings required or so requested for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed; and such power, being coupled with an interest, shall be irrevocable until this Agreement terminates in accordance with its terms, all obligations of the Borrower to the Bank are irrevocably paid in full and the Collateral is released.

2.11   Amendments and Waivers. This Agreement may be amended and the Borrower may take any action herein prohibited, or omit to perform any act herein required to be performed by it, if the Borrower shall obtain the Bank's prior written consent to each such amendment, action or omission to act. No delay or omission on the part of the Bank in exercising any right hereunder shall operate as

Loan Number - Note 1: 01539240001

a waiver of such right or any other right and waiver on any one or more occasions shall not be construed as a bar to or waiver of any right or remedy of the Bank on any future occasion.

2.12 Terms of Agreement. This Agreement shall continue in force and effect so long as any obligation of the Borrower to Bank shall be outstanding and is supplementary to each and every other agreement between the Borrower and Bank and shall not be so construed as to limit or otherwise derogate from any of the rights or remedies of Bank or any of the liabilities, obligations or undertakings of the Borrower under any such agreement, nor shall any contemporaneous or subsequent agreement between the Borrower and the Bank be construed to limit or otherwise derogate from any of the rights or remedies of Bank or any of the liabilities, obligations or undertakings of the Borrower hereunder, unless such other agreement specifically refers to this Agreement and expressly so provides.

2.13 Notices. Any notices under or pursuant to this Agreement shall be deemed duly received and effective if delivered in hand to any officer of agent of the Borrower or Bank, or if mailed by registered or certified mail, return receipt requested, addressed to the Borrower or Bank at the address set forth in this Agreement or as any party may from time to time designate by written notice to the other party; notwithstanding the foregoing notices to the Bank with respect to accounting and collateral release and notices to the Trustee pursuant to a Deed of Trust shall be sent to the Bank as follows: Attention: VP Loan Servicing, Loan Services, 6000 Atrium Way, Mt. Laurel NJ 08054.

2.14 ORAL AGREEMENTS. UNDER MAINE LAW, NO PROMISE, CONTRACT OR AGREEMENT TO LEND MONEY, EXTEND CREDIT, FOREBEAR FROM COLLECTION OF A DEBT OR MAKE ANY OTHER ACCOMMODATION FOR THE REPAYMENT OF A DEBT FOR MORE THAN $250,000 MAY BE ENFORCED IN COURT AGAINST A LENDER UNLESS THE PROMISE, CONTRACT OR AGREEMENT IS IN WRITING AND SIGNED BY THE LENDER. ACCORDINGLY, BORROWER CANNOT ENFORCE ANY ORAL PROMISE UNLESS IT IS CONTAINED IN LOAN DOCUMENTS SIGNED BY THE BANK, NOR CAN ANY CHANGE, FORBEARANCE, OR OTHER ACCOMMODATION RELATING TO ANY OF THE LOAN DOCUMENTS BE ENFORCED, UNLESS IT IS IN WRITING AND SIGNED BY THE BANK. BORROWER ALSO UNDERSTANDS AND AGREES THAT ALL FUTURE PROMISES, CONTRACTS OR AGREEMENTS OF THE BANK RELATING TO ANY OTHER TRANSACTION BETWEEN IT AND THE BANK CANNOT BE ENFORCED IN COURT UNLESS THEY ARE IN WRITING AND SIGNED BY THE BANK. BY EXECUTION OF THIS AGREEMENT AND ANY ALL NOTES, BORROWER HEREBY ACKNOWLEDGES AND AGREES THAT THE REQUIREMENT OF A WRITING DESCRIBED IN THIS PARAGRAPH SHALL APPLY TO EACH SUCH NOTE, THE LOAN DOCUMENTS, ANY EXTENSION, MODIFICATION, RENEWAL, FORBEARANCE OR OTHER ACCOMMODATION RELATING HERETO OR THERETO, AND TO ANY OTHER CREDIT RELATIONSHIP BETWEEN BORROWER AND THE BANK (WHETHER NOW EXISTING OR CREATED IN THE FUTURE), WHETHER OR NOT THE AMOUNT INVOLVED EXCEEDS $250,000.

2.15 Maine Law. This Agreement is intended to take effect as a sealed instrument and has been executed or completed and is to be performed in Maine, and it and all transactions thereunder or pursuant thereto shall be governed as to interpretation, validity, effect, rights, duties and remedies of the parties thereunder and in all other respects by the laws of Maine without giving effect to the conflicts of laws principles thereof.

2.16 JURY WAIVER. BORROWER AND BANK EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, WAIVE (A) ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS AGREEMENT, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. THE BORROWER CERTIFIES THAT NEITHER THE BANK NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE BANK WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

Executed under seal on this day July 01, 2010.

Borrower:

*/s/ Mary Rivers*
Mary Rivers, Individually

Accepted: TD Bank, N.A.

By: */s/ Richard B. Olfene*
Name: Richard Olfene
Title: Duly Authorized Representative

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned

Loan Number - Note 1: 01539240001

4

guarantor(s) hereby irrevocably and unconditionally acknowledge and confirm to the Bank that the guaranty of the obligations of the Borrower including without limitation respecting the Note continues in full force and effect and is a valid and binding obligation of the undersigned guarantor(s) in accordance with its terms, that no defenses, offsets, claims, counterclaims exist with respect to such guaranty(s), and that each such guaranty is enforceable in accordance with its terms, and guarantees and shall continue to guarantee in accordance with its terms the performance of all amounts guaranteed thereby including without limitation in addition to all other liabilities and obligations guaranteed thereby, all liabilities and obligations of the Borrower to the Bank respecting the Note and the other Loan Documents as affected hereby.

Executed under seal on this day July 01, 2010.

Guarantor:

*[signature]*

Lorrie A. Petrone, as Trustee of
York Street Trust

Loan Number - Note 1: 01539240001

5

Modification-Extension Agreements(7)