UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:

LAO PROPERTIES, LLC,

Debtor.

Chapter 11

Case No. 11-21571

### DEBTOR'S STATEMENT AND MEMORANDUM OF LAW IN SUPPORT OF PLAN CONFIRMATION OF THE PLAN OF REORGANIZATION OF LAO PROPERTIES, LLC DATED MARCH 2, 2012

LAO Properties, LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), by and through its undersigned counsel, hereby files this Debtor's Statement and Memorandum of Law in Support of Plan Confirmation of the Plan of LAO Properties, LLC Dated March 2, 2012 (the "Plan").[1] As discussed more fully below, the Plan meets all of the requirements of § 1129(a) of title 11 of the United States Code (the "Bankruptcy Code") and, to the extent required, meets the requirements of § 1129(b) of the Bankruptcy Code, therefore, the Plan should be confirmed. In support of confirmation of the Plan, the Debtor states the following:

### I. Procedural Background

1. On November 1, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. On March 2, 2012, the Debtor filed its Disclosure Statement with Respect to Plan of Reorganization of LAO Properties, LLC Dated March 2, 2012 [Docket No. 100] (the "Disclosure Statement").

---

[1] Use of capitalized terms not otherwise defined herein shall have the meaning given such terms in the Plan or Disclosure Statement, as applicable.

3. After a hearing held on February 29, 2012, the Court approved the terms of the Disclosure Statement and, on March 6, 2012, entered the Order Approving Debtor's Disclosure Statement; Setting Date for Confirmation Hearing; and Establishing Deadlines for Receipt of Ballots, and Filing Rule 3018(a) Motions [Docket No. 103] (the "Approval Order").

4. On March 6, 2012, the Debtor served on all of the Debtor's creditors, the U.S. Trustee, and other parties in interest: (a) the Disclosure Statement; (b) the Plan; (c) the Notice of Hearing notifying parties in interest of the objection deadline and the date of the confirmation hearing with regard to the Plan; (d) the Approval Order; (e) the proposed form of order confirming the Plan; and (f) a ballot relating to voting to accept or reject the Plan.

5. Under the terms of the Approval Order, creditors holding claims in impaired classes under the Plan were required to vote to accept or reject the Plan on or before April 13, 2012. Pursuant to orders entered by the Court on April 13, 2012 and April 18, 2012, TD Bank and Deutsche Trust respectively were granted extensions of time to file any objection to the Plan until April 18, 2012. The following is a tabulation of voting results (and certain other pertinent matters) broken down by each impaired class:

| CLASS/CREDITOR | STATUS OF VOTE | TOTAL CLAIM AMOUNT | ACCEPTANCE OR REJECTION BY CLASS AND STATUS OF NEGOTIATIONS |
|---|---|---|---|
| **Class One – Old School** | **Voted in favor** | $830,000.00 | **Accepted** |
| **Class Two – 2006 BONY Trust** | **Did not vote** | $974,953.00 | **Filed objection to Plan** |
| **Class Three – Powder Mill** | **Voted in favor** | $1,300,000.00 | **Accepted** |

2

| | | | |
|---|---|---|---|
| **Class Four – 2005 BONY Trust** | **Did not vote** | **$911,978.94** | **Filed objection to Plan** |
| **Class Five – One West Bank** | **Did not vote** | **$426,764.11** | **Debtor and One West reached agreement concerning treatment of claims (subject to approval by Court)** |
| **Class Six – Provident** | **Voted in favor (ballot arrived after deadline)** | **$325,000.00** | **Debtor and Provident reached agreement concerning treatment of claims (subject to approval by Court)** |
| **Class Seven – TD Bank** | **Did not vote** | **$150,000.00** | **Agreement set forth in Order dated April 19, 2012** |
| **Class Eight – 2007 BONY Trust** | **Did not vote** | **$640,429.04** | **Filed Objection to Plan** |
| **Class Nine – Optima** | **Voted in favor** | **$400,000.00** | **Accepted** |
| **Class Ten – DDP** | **Did not vote** | **Approximately $1,000,000.00** | **Did not file an objection to the Plan** |
| **Class Eleven – First Horizon** | **Did not vote** | **Approximately $250,000.00** | **Did not file an objection to the Plan** |
| **Class Twelve – MERS-Nation One** | **Did not vote** | **Approximately $121,000.00** | **Did not file an objection to the Plan** |
| **Class Thirteen – BSB** | **Did not vote** | **$45,145.72** | **Did not file an objection to the Plan** |
| **Class Fourteen – Deutsche Trust** | **Did not vote** | **$461,360.74** | **Filed an objection to the Plan, however, property in which Deutche Trust** |

|  |  |  | asserts and interest turned over to TD Bank pursuant to above Order |
|---|---|---|---|
| **Class Fifteen – BOM** | **Did not vote** | **$45,145.72** | **Did not file an objection to the Plan** |
| **Class Sixteen – Nuzzo** | **Did not vote** | **Approximately $200,000.00** | **Did not file an objection to the Plan** |
| **Class Seventeen – Destefano** | **Did not vote** | **$668,930.37** | **Did not file an objection to the Plan** |
| **Class Eighteen – Sewer District** | **Did not vote** | **$5,727.66** | **Did not file an objection to the Plan** |
| **Class Nineteen – York** | **Did not vote** | **$67,440.24** | **Did not file an objection to the Plan** |
| **Class Twenty[2]** |  |  | **Accepted** |
| **Old School** | **Voted in favor** | **$60,453.83** |  |
| **CMP** | **Voted in favor** | **$4,448.30** |  |
| **Powder Mill** | **Voted in favor** | **$255,665.84** |  |
| **Fairpoint** | **Voted in favor** | **$21.80** |  |
| **Mary Rivers** | **Voted in favor** | **$524,878.03** |  |
| **York Water District** | **Voted in favor** | **$2,155.36** |  |
| **Optima** | **Voted in favor** | **$141,363.53** |  |
| **D.F. Richards Energy** | **Voted in favor** | **$919.91** |  |
| **Lancaster** | **Voted in favor** | **$2,682.72** |  |

---

[2] The remaining unsecured creditors of the Debtor will be identified below, however, no unsecured claimants voted against the Plan. Although BONY did not vote in relation to the Plan, it did file objections to the Plan as noted above. Even assuming the objections constitute votes against the Plan, pursuant to the terms of § 1126(c) of the Bankruptcy Code, Class Twenty still voted in favor of the Plan. Nothing set forth herein is intended to alter or prejudice the rights of the Debtor in relation to objecting to the amount and validity of any claims against the Debtor or any interests in any Assets of the Debtor.

| AKR | Voted in favor | $542.43 | |
| Provident | Voted in favor (ballot arrived after deadline) | $34,769.73 | |

6. From the above vote tabulation, pursuant to § 1126(c) of the Bankruptcy Code, the following impaired classes voted to accept the Plan: Class One, Class Three, Class Six, Class Nine, Class Twenty and Class Twenty-One.

## II. Argument

Except for the "cram-down" provisions under § 1129(b) of the Bankruptcy Code, a plan of reorganization may only be confirmed if it meets all of the sixteen (16) factors set out in § 1129(a). As discussed in further detail below, the Plan satisfies all of these factors (to the extent applicable).

### A. Section 1129(a)(1)

A court may only confirm a plan of reorganization if that plan, inter alia, "complies with the applicable provisions of [the Bankruptcy Code]." See 11 U.S.C. § 1129(a)(1). Chief among the provisions contemplated by § 1129(a)(1) is whether a plan complies with §§ 1122 and 1123 of the Bankruptcy Code, which provisions address whether a plan properly classifies claims and which provisions mandate the contents of a plan. Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 842 F.2d 636, 648-649 (2nd Cir. 1988) ("Paragraph 1 of section 1129(a) requires that a plan comply with applicable provisions of chapter 11, such as section 1122 and 1123, *governing classification and contents of plan*. It is doubtful that violations of Code provisions unrelated to form and content of a plan, such as voting procedures, implicate subsection 1129(a)(1) at all." (emphasis in original)); see also In re Sentinel Mgmt. Group, Inc.,

5

398 B.R. 281, 292 (Bankr. N.D. Ill. 2008) (stating that § 1129(a)(1) is "aimed at compliance with 11 U.S.C. §§ 1122 and 1123.").

In this case, the Plan satisfies § 1122 of the Bankruptcy Code because the Plan places all of the creditors with substantially similar claims and interests in the same class. 11 U.S.C. § 1122(a). The secured creditors of the Debtor are in separate classes from each other based on their interests in and to different real property of the Debtor, as well as the different nature of those interests in and to that property, and are in separate classes from the other creditors based on their secured position. All of the general unsecured creditors are in the same class.

The Plan also satisfies the requirements of § 1123 of the Bankruptcy Code. Specifically, the Plan properly classifies each of the claims against the estate, specifies the treatment of each class of claims in detail, and characterizes the classes as either impaired or unimpaired. 11 U.S.C. § 1123(a)(1)-(3). Moreover, the claims within each class are treated in an identical manner. 11 U.S.C. § 1123(a)(4). Section 1123(a)(5) is satisfied because the Plan provides for the retention of part of property of the Debtor's estate. 11 U.S.C. § 1123(a)(5). The Debtor believes that the Plan contains all of the provisions required (as applicable) under § 1123 and, therefore, the Plan satisfies the requirements of § 1129(a)(1).

### B. Section 1129(a)(2)

Section 1129(a)(2) requires that the Debtor comply with the applicable provisions of the Bankruptcy Code. "According to the legislative history, this section is intended to ensure compliance with Section 1125 regarding disclosure[,] . . . [however] mere compliance with the disclosure requirements will not suffice." Richard F. Broude, <u>Reorganizations Under Chapter 11 of the Bankruptcy Code</u>, § 12.05 (2008) (<u>citing</u> <u>In re Hickey Props., Ltd.</u>, 181 B.R. 173 (Bankr. D. Vt. 1995)).

There is no respect in which the Debtor has failed to comply with the applicable provisions of the Bankruptcy Code, including § 1125. This Court approved the Disclosure Statement by the Approval Order. The Debtor also believes that it has complied with any and all other requirements of the Bankruptcy Code, therefore, the requirements of § 1129(a)(2) have been satisfied.

C. <u>Section 1129(a)(3)</u>

Section 1129(a)(3) requires that the Plan be proposed in good faith and not by any means forbidden by law. As one court has noted, § 1129(a)(3) requires only that the plan be designed to achieve a goal allowed under chapter 11 and the proponent has provided proper disclosure. <u>In re Mulberry Phosphates, Inc.</u>, 149 B.R. 702, 708 (Bankr. M.D. Fla. 1993); <u>see also</u>, <u>In re RiverValley Fitness One L.P.</u>, No. 01–12829–JMD, 2003 WL 22298573, at *3 (Bankr. D.N.H. Sep. 13, 2003) (good faith under § 1129(a)(3) is generally interpreted to mean that there exists a reasonable likelihood that the plan will achieve a result consistent with the purpose and objectives of the Bankruptcy Code.); <u>In re Keach</u>, 243 B.R. 851, 857 (1st Cir. B.A.P. 2000) (§ 1129(a)(3) requires only honesty of purpose); <u>In re Waterville Valley Town Square Assoc.</u>, 208 B.R. 90, 96 (Bankr. D.N.H. 1997) (§ 1129(a)(3) merely requires that plan be proposed for a legitimate purpose).

Moreover, it is the plan's proposal which must be in good faith. The "focus of 1129(a)(3) is upon the conduct manifested in obtaining the confirmation votes of a plan . . . and not necessarily on the substantive nature of the plan." <u>In re Dow Corning Corp.</u>, 244 B.R. 673, 675 (Bankr. E.D. Mich. 1999) (quoting <u>In re Sovereign Group, 1984-21 Ltd.</u>, 88 B.R. 325, 328 (Bankr. D. Colo. 1988)). In other words, "[w]here a plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of

7

[section] 1129(a)(3) is satisfied." Corestates Bank, N.A. v. United Chem. Techs., Inc., 202 B.R. 33, 56 (E.D. Pa. 1996) (rejecting the creditor's argument that the plan at issue was filed in bad faith because the plan forced in essence a coerced loan with unacceptable risks on the creditor). A good faith finding is based upon the totality of the circumstances. BealBank, S.S.B. v. Waters Edge L.P., 248 B.R. 668, 668 (D. Mass. 2000).

In this case, the Debtor believes that the Plan satisfies the good faith requirement of § 1129(a)(3). On the Petition Date, the Debtor owned fourteen (14) pieces of real property. Virtually all of the properties were involved in state court foreclosure proceedings. The foreclosure proceedings were stayed as a result of the filing. After the filing, the Debtor was able to turnover four (4) pieces of real property that were losing money to lenders with interests in the properties. These turnovers allowed the Debtor to reduce its debt obligations by approximately $1 million. In addition, the Debtor was able to reach agreements with Old School, Powder Mill, One West (subject to Court approval), Provident (subject to Court approval) and Optima, which agreements allow the Debtor to retain income producing properties with restructured debt obligations that allow these properties to cash flow more positively. Through the Plan, assuming confirmation, the obligations of the Debtor in relation to the remaining properties will be structured in a manner that will allow the Debtor to operate profitably going forward. For these and other reasons, the Debtor contends that the Plan was proposed for the legitimate purpose of reorganizing and, therefore, was proposed in good faith and not by any means forbidden by law.

D.  **Section 1129(a)(4)**

Any payments for services or for costs and expenses covered by § 1129(a)(4) of the Bankruptcy Code, which the Debtor believes are limited to costs and expenses of its counsel, its

appraiser and accountant, have been approved by, or are subject to the approval of, this Court as reasonable and, therefore, the requirements of § 1129(a)(4) are met.

    E.    **Section 1129(a)(5)**

Section 1129(a)(5) requires the disclosure by the Debtor of the identity and affiliations of any individual proposed to serve as an officer, director or voting trustee of the Debtor and that such appointment or continuance be consistent with the interests of creditors and equity security holders and with public policy.  11 U.S.C. § 1129(a)(5).  The Debtor must also disclose the identity of any insider who will be employed by the Debtor and the nature of any compensation to be paid to such insider.  Id.

Under the terms of the Plan, the equity structure of the Debtor will remain in place as it existed on the Petition Date.  Lorri O'Brien, Paul O'Brien and AKR Management, LLC were the sole members of the Debtor prior to the Petition Date and will remain the sole members of the Debtor upon confirmation of the Plan.  These members currently do not receive any compensation for their services in helping to manage the properties owned by the Debtor.  Historically, the Debtor has paid a commission to Rivers by the Sea ("RBS") in return for RBS leasing and managing the properties.  This relationship was terminated post-petition.  In the event a commission is not paid to RBS or to any other third-party management company on a go forward basis, one or more of the members may be compensated for services provided to the Debtor that would otherwise be provided by a management company.  The compensation will not exceed the commission amounts set forth on **Exhibit A** to the Plan, subject to ordinary adjustment over time.  In the event a management company is retained, no compensation will be paid to any member of the Debtor.

### F. Section 1129(a)(6)

Section 1129(a)(6) is inapplicable to the Debtor because the Debtor is not within the jurisdiction of any regulatory commission.

### G. Section 1129(a)(7)

Section 1129(a)(7) requires that, with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has either accepted the Plan, or will receive property of a value not less than the amount the holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(7).

As indicated by the plain language of § 1129(a)(7), in the event **individual** creditors holding claims in an impaired class do not accept the plan, the Court must make a finding that each such claimant will receive under the plan an amount not less than the amount such creditor would receive under a chapter 7 liquidation. Kane, 843 F.2d at 649; In re Toy & Sports Warehouse, Inc., 37 B.R. 141, 150 (Bankr. S.D.N.Y. 1984) ("[s]ubsection (7) focuses upon the holder of a claim, as distinguished from the class in which the claim is placed"); In re Computer Optics, Inc., 126 B.R. 664, 667 (Bankr. D.N.H. 1991).

The Plan contains twenty one (21) impaired classes. As set forth above, the following impaired classes have voted to accept the Plan: Class One, Class Three, Class Six, Class Nine, Class Twenty (although certain individual creditors who failed to vote in favor of the plan will be discussed below) and Class Twenty One. In addition, although certain creditors did not vote in favor of the Plan, the following Classes have agreed to the terms of the Plan as modified by the terms of the proposed confirmation order (subject to Court approval): Class Five and Class Seven.

No impaired classes voted against the Plan, although the Bank of New York, as Trustee, objected to the Plan in relation to Class Two, Class Four, and Class Eight. Deutsche Bank also objected to the Plan in relation to Class Fourteen. Additionally, the creditors in Classes Ten through Thirteen and Classes Fifteen through Nineteen failed to vote on the Plan. From this, pursuant to the requirements of § 1129(a)(7), the Debtor must demonstrate that the following parties will receive as much under the Plan as these claimants would receive in a chapter 7 liquidation (which list includes the unsecured claimants who failed to vote on the Plan): (a) Bank of New York Mellon, as Trustee; (b) Deutsche Trust; (c) DDP; (d) First Horizon; (e) MERS-Nation One; (f) BSB; (g) BOM; (h) Nuzzo; (i) Destefano; (j) Sewer District; (k) York; (l) AK Condominium Association; (m) Bragdon Commons Condominium Association; (n) Holyoke Mutual Insurance; (o) Middlesex Assurance Company; (p) Perkins Propane; (q) Premium Financing Specialists; (r) Proulx Oil & Propane; (s) Time Warner Cable of Maine; and (t) Union Mutual of Vermont.

Each of these claimants will receive at least as much under the Plan as such claimants would receive under Chapter 7, and, in fact, more. The parties identified in (l) through (t) above are claimants in the class of general unsecured creditors of the Debtor. The creditors identified in (c) through (i) are unsecured creditors premised on the application of § 506 of the Bankruptcy Code. Under the Plan, these claimants will receive pro rata distributions of the Annual Net Operating Revenue of the Debtor for a period of seven (7) years. On the other hand, as outlined in the Disclosure Statement, in the event the real properties are sold in a chapter 7 liquidation, these claimants would receive nothing (and would receive nothing as a result of any other sources of revenue in chapter 7).

After accounting for the above, only the claimants identified in (a), (b), (j) and (k) remain. The Bank of New York, as Trustee, holds first mortgages on three (3) properties with an aggregate value of $2,089,000.00. Assuming a liquidation value of seventy percent (70%) of the fair market value of these three (3) properties, these properties would likely liquidate for approximately $1,462,300.00. Under the Plan, the Debtor proposes to pay the Bank of New York, as Trustee, the full value of these properties over time with interest. Premised on this treatment, the Bank of New York, as Trustee, will do better under the Plan than in a liquidation under chapter 7.

The Deutsche Trust holds a second priority mortgage on the property generally located at 35 York Street, York, Maine. The Debtor has agreed to turn this property over to TD Bank, which holds a first priority mortgage on the property. Premised on the turnover of the property to TD Bank, the Deutsche Trust is receiving essentially what it would likely receive in a chapter 7 liquidation.

The claimants in (j) and (k) above are the Town of York and the York Sewer District, for property tax and sewer obligations of the Debtor, respectively. These claims are fully secured by liens on the properties to which they pertain. Premised on this, these claims would be paid in full pursuant to a liquidation. Because these claims are being paid with interest, however, these claimants are receiving the full value of their claims over time and being compensated for the time value of money. Because of this, these claimants are receiving at least as much under the Plan as they would receive under a chapter 7 liquidation. Corestates, 202 B.R. at 56 (E.D. Pa. 1996) (district court concluded that the bankruptcy court's finding that the plan at issue satisfied the best interest of creditors test was not clearly erroneous because oversecured creditor received full payment of its claim **over time** under the plan with interest even though

12

creditor would have received full payment through a liquidation at the time of liquidation.). For these reasons, the requirements of § 1129(a)(7) are satisfied in relation to all creditors.

    **H.**    <u>**Section 1129(a)(8)**</u>

Section 1129(a)(8) requires that with respect to each class of claims or interests, such class has either accepted the plan or is not impaired under the plan. 11 U.S.C. § 1129(a)(8). Acceptance, in turn, is governed by the provisions of § 1126 of the Bankruptcy Code. Section 1126(c) provides that a class has accepted the plan if the creditors holding: (a) at least two-thirds in amount; and (b) one-half in number of allowed claims, that have voted on the Plan have voted to accept the Plan.

As noted above, the Plan contains twenty one (21) classes of claims. Classes One, Three, Six, Nine, Twenty[3] and Twenty-One have voted to accept the Plan. Agreements have been reached, subject to Court approval, with Classes Five, Seven (the settlement with Class Seven, TD Bank, has been approved) and Fourteen. Classes Ten through Thirteen and Fifteen through Nineteen failed to vote on the Plan or to file an objection to the Plan. In the event a creditor does not object to a plan, its failure to accept or reject the Plan may be deemed an acceptance of the Plan. <u>In re Ruti-Sweetwater, Inc.</u>, 836 F.2d 1263 (10th Cir. 1988) (holding that impaired, sole member of a class that neither rejected the plan nor objected to it was deemed to accept the Plan for § 1129(b) purposes); <u>In re DBSD N. Am., Inc.</u>, 419 B.R. 179, 206 (Bankr. S.D.N.Y. 2009) (agreeing with <u>Ruti-Sweetwater</u> and stating "where the plan proponents have otherwise secured the assent of at least one impaired class, and there are no votes whatever in a particular class, the

---

[3] Although Mary Rivers is an insider of the Debtor, as such term is defined by the Bankruptcy Code, her vote may still be counted for purposes of § 1126 because courts have held that insider votes can be counted in circumstances where § 1129(a)(10) can be satisfied in the absence of considering the insider votes. <u>In re United Marine, Inc.</u>, 197 B.R. 942, 946 (Bankr. S.D. Fla. 1996); <u>Matter of Grimes Furniture, Inc.</u>, 47 B.R. 68, 70 (Bankr. W.D. Pa. 1985).

absence of votes in a class doesn't result in failure to satisfy section 1129(a)(8)."); In re Adelphia Commc'n Corp., 368 B.R. 140, 261 (Bankr. S.D.N.Y. 2007) (agreeing with Ruti-Sweetwater).

From the above, the only parties who have not accepted the Plan are the Deutsche Trust in relation to Class Fourteen and the Bank of New York, as Trustee, in relation to Class Two, Class Four, and Class Eight. Although the Deutsche Trust has also not accepted the Plan, the property in which it asserts an interest is being turned over to TD Bank pursuant to an agreement reached between the Debtor and TD Bank. The Debtor believes that this turnover resolves the issues with the Deutsche Trust, however, the Debtor reserves all rights in relation to the Deutsche Trust in the event the objection has not been resolved.

In the event the Debtor and the Bank of New York, as Trustee, cannot reach an agreement which is acceptable to the Court, the Debtor believes that the Plan can be confirmed under § 1129(b) over the objection of the Bank of New York, as Trustee. Under § 1129(b) of the Bankruptcy Code, this Court may confirm the Plan, notwithstanding the Debtor's failure to satisfy § 1129(a)(8), if "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. §1129(b)(1).

In relation to the "discrimination" element, courts have held that "a dissident class must receive treatment which allocates value to the class in a manner consistent with the treatment afforded to other classes with similar legal claims against the debtor." Corestates, 202 B.R. at 47. In other words, "[a] plan that does discriminate unfairly gives unequal treatment to creditors who are similarly situated regarding legal rights and priority." Id.

Concerning the "fair and equitable" standard of § 1129(b), courts have held that a plan is "fair and equitable" if it can satisfy the requirements of § 1129(b)(2). 11 U.S.C. § 1129(b)(2); ." Corestates, 202 B.R. at 48. In relation to secured claims, § 1129(b)(2)(A) provides as follows:

> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
>
> (A) With respect to a class of secured claims, the plan provides –
>
> (i) (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property[.]

11 U.S.C. § 1129(b)(2)(A).

In this case, the Plan satisfies the requirements of § 1129(b) in relation to the secured claims of the Bank of New York, as Trustee, because the Plan does not discriminate against the claims of the Bank of New York, as Trustee. Although the Bank of New York, as Trustee, may be receiving a different interest rate and being paid over a different amortization period than certain other creditors with first position mortgages on certain properties, these differing treatments are the result of agreements reached between these creditors and the Debtor. As originally drafted, all secured creditors holding first priority mortgages on properties were treated identically.

The Plan also satisfies the "fair and equitable" standard. Under the Plan, the Bank of New York, as Trustee, retains its interest in the properties upon which it holds mortgages.

Additionally, the Plan provides for deferred cash payments over time equal to the allowed amount of the Bank of New York secured claim. Under the Plan, the Bank of New York, as Trustee, receives monthly payments on the total amount of its claims at the rate of 4.25% (prime plus 1%), with an amortization period of forty (40) years, however, the loan matures in ten (10) years. The Debtor contends that this interest rate is consistent with the formula approach set forth by the Supreme Court. Till v. SCS Credit Corp., 541 U.S. 465, 474-75 (2004). In Till, the Court defined the appropriate rate of interest to be applied under the cram down provisions under the Bankruptcy Code as the prime rate of interest plus a risk factor. Id. at 478-79. In the words of the Court:

> Taking its cue from ordinary lending practices, the approach begins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Because the bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly.

Id. Although the Till decision addressed the formula approach in the context of a chapter 13 plan, the Court suggested that the formula approach could be used under other chapters of the Bankruptcy Code for purposes of determining applicable interest rates. Id. at 474 ("We think it likely that Congress intended bankruptcy judges and trustees to follow essentially the same approach when choosing an appropriate interest rate under any of [the deferred payment] provisions."); In re Mirant, 334 B.R. 800, 821 (Bankr. S.D. Tex. 2005) ("While Till adopts a formula suitable to calculating the interest rate for secured claims in consumer cases, the formula approach remains valid in determining required return for cram down purposes on other obligations.").

The risk factors under the formula approach include the nature of the security, the circumstances of the estate, and the duration and feasibility of the plan. In this case, for the reasons set forth below and to be established at the confirmation hearing, the Debtor contends that the Plan is feasible. Additionally, the nature of the collateral leans heavily in favor of the interest provided for by the Plan. The Bank of New York, as Trustee, holds first position mortgages on three (3) properties of the Debtor. Interests in real property are generally considered relatively secure when contrasted against other types of collateral. Lastly, although the Plan provides for a forty (40) year amortization schedule, under the Plan, the Bank of New York, as Trustee, is paid in full in roughly ten (10) years, meaning the "duration" of the Plan is relatively short. For these reasons, the Debtor believes that the requirements of § 1129(b) have been satisfied in this case.

### I. Section 1129(a)(9)

Pursuant to § 1129(a)(9), certain types of priority claims, including § 507(a)(2) claims, must be paid in cash an amount equal to the allowed amount of the claim on the effective date of the plan, unless the claimant agrees to different treatment. 11 U.S.C. § 1129(a)(9). The Debtor believes that all § 507(a)(2) claims have been paid and/or will be paid as of the Effective Date of the Plan or in a manner agreed to by the Debtor and the claimant. The Debtor believes that there are no claims against the Debtor under § 507(a)(1), § 507(a)(3), § 507(a)(4), § 507(a)(5), § 507(a)(6), § 507(a)(7), or § 507(a)(8). For these reasons, § 1129(a)(9) has been satisfied in this case.

### J. Section 1129(a)(10)

Section 1129(a)(10) requires that if a class of claims is impaired under the Plan, at least one class of claims that is impaired must accept the Plan, without including any acceptance of the plan by any insider. 11 U.S.C. § 1129(a)(10). Class One, Class Three, Class Six (vote received after the deadline), and Class Nine are impaired classes under the Plan that voted in favor of the Plan, and these classes do not contain any insiders of the Debtor. Class Twenty also accepted the Plan even in circumstances where the votes of insiders are excluded from the calculations. For these reasons, § 1129(a)(10) has been satisfied in this case.

### K. Section 1129(a)(11)

Section 1129(a)(11) sets forth the "feasibility" standard and provides that a plan may be confirmed only if confirmation is "not likely to be followed by the liquidation or the need for further financial reorganization of the debtor." 11 U.S.C. § 1129(a)(11). "A plan meets the feasibility standard if the plan offers a reasonable prospect of success and is workable. The prospect of financial uncertainty does not defeat plan confirmation on feasibility grounds since a guarantee of the future is not required." Mut. Life Ins. Co. of N.Y. v. Patrician St. Joseph Partners Ltd. P'ship (In re Patrician St. Joseph Partners Ltd. P'ship), 169 B.R. 669, 674 (D. Az. 1994) (internal citations omitted); Kane, 843 F.2d at 649 ("As the Bankruptcy Court correctly stated, the feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed.").

The Plan in this case satisfies the "feasibility" requirement of § 1129(a)(11). Since the Petition Date, the Debtor has taken a number of steps in an effort to make the Debtor net cash flow positive on a go forward basis. First, the Debtor turned three (3) properties over to Ann Marie Mirabito. By turning these properties over to the lender, the Debtor was able to reduce its

debt obligations by approximately $438,000.00.  Turning over the Debtor's unit at the Lancaster Condominiums also had the benefit of resolving certain title issues relating to the property that left the Debtor with no value in the property.

Second, the Debtor also turned over the property generally located at 35 York Street, York, Maine to TD Bank.  This turnover helped the Debtor resolve its debt obligations both to TD Bank and the Deutsche Trust and eliminated a property that has historically lost money.

Third, the Debtor was able to negotiate the consensual restructuring of obligations with Optima, Powder Mill, Old School, One West, and Provident.  These restructurings allowed the Debtor to reduce its secured debt obligations considerably and have helped the Debtor to project net positive cash flow on a go forward basis.

As will be demonstrated at the confirmation hearing, the Debtor has projected revenue at approximately 83% of historic highs for these properties.  Even at 83% of historic highs, the Debtor has sufficient net operating revenue to fund operating expenses and debt service as consensually restructured or as restructured through the Plan.  For these reasons, all of which will be established at the confirmation hearing, the Debtor believes that the Plan is feasible and satisfies the requirements of § 1129(a)(11).

### L.      Section 1129(a)(12)

Under the terms of the Plan, all fees payable under 28 U.S.C. § 1930 will accrue and be timely paid until the case is closed, dismissed or converted to another chapter of the Bankruptcy Code and any fees owed on or before the Effective Date shall be paid on the Effective Date. [Plan, §3.1].  The Debtor therefore submits that § 1129(a)(12) has been satisfied.

### M. Section 1129(a)(13)

Section 1129(a)(13) is not applicable to the Debtor's case because the Debtor does not have any obligations relating to the payment of retiree benefits.

### N. Section 1129(a)(14)

Section 1129(a)(14) is not applicable to the Debtor's case because the Debtor is not an individual and does not have any domestic support obligations.

### O. Section 1129(a)(15)

Section 1129(a)(15) is not applicable to the Debtor's case because the Debtor is not an individual.

### P. Section 1129(a)(16)

Section 1129(a)(16) is not applicable to the Debtor's case because the Debtor is not a non-profit corporation.

WHEREFORE, the Debtor respectfully requests that this Court enter an order (a) confirming the Plan in all respects; and (b) granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

**LAO PROPERTIES, LLC**

By its attorneys:

DATED: April 23, 2012

/s/ Sam Anderson
D. Sam Anderson, Esq.
Jeremy R. Fischer, Esq.
BERNSTEIN, SHUR, SAWYER & NELSON, P.A.
100 Middle Street, P.O. Box 9729
Portland, Maine 04104-5029
Telephone: (207) 774-1200
sanderson@bernsteinshur.com