In re:

LAO PROPERTIES, LLC,

     Debtor.

Chapter 11

Case No. 11-21571

## ORDER CONFIRMING PLAN OF REORGANIZATION OF
## LAO PROPERTIES, LLC DATED MARCH 2, 2012

  Pursuant to this Court's Order Approving Debtor's Disclosure Statement, Setting Date for Confirmation Hearing, and Establishing Deadlines for Receipt of Ballots and Filing of Rule 3018(a) Motions (the "Approval Order"), on April 25, 2012, this Court conducted a final hearing (the "Hearing") on confirmation of the Plan (all capitalized terms used herein shall have the meaning ascribed to such terms in the Plan or in the Disclosure Statement with Respect to the Plan (the "Disclosure Statement"), unless otherwise defined herein), and the Debtor, pursuant to and in accordance with the terms and provisions of the Approval Order, having mailed true and correct copies of the Approval Order, the Disclosure Statement, the Plan and ballots relating to voting on the Plan to all known Holders of Claims against the Debtor, and to all other parties in interest (including all parties who have filed a notice of appearance in the Case) entitled to receive copies of same, the Approval Order having set April 13, 2012 as the deadline to object to the Plan and the deadline for filing written acceptances and rejections of the Plan, the Court having considered the arguments of counsel for the Debtor, the evidence at the Hearing, and the materials filed in support of the Plan, and the Court having considered the Plan and the Disclosure Statement, the Court hereby makes the following findings of fact and conclusions of law, and enters the following order (the "Confirmation Order"):

## A.    **FINDINGS OF FACT**

1.    As required by § **1129(a)(1)**,[1] the Plan complies with the applicable provisions of the Bankruptcy Code, including, without limitation, §§ 1121, 1122 and 1123 thereof.

2.    As required by § **1129(a)(2)**, the Debtor has complied with the applicable provisions of the Bankruptcy Code.

3.    As required by § **1129(a)(3)**, the Plan has been proposed in good faith and not by any means forbidden by law.

4.    As required by § **1129(a)(4)**, all payments made or to be made by the Debtor for services or for costs and expenses in or in connection with the Case, or in connection with the Plan and incident to the Case, have been approved by or are subject to the approval of the Bankruptcy Court as reasonable.

5.    As required by § **1129(a)(5)**, the Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as an officer of the Debtor and the appointment or continuance in such office is consistent with the interests of creditors, equity security holders and public policy and the Debtor has disclosed the identity of any insider that will be employed by the Debtor and the nature of any compensation to such insider.

6.    No regulatory approval is required to implement the Plan under § **1129(a)(6)**.

7.    Under the Plan, Classes One through Twenty-One, and the Holders of Claims and/or interests in such classes, were entitled to vote for acceptance or rejection of the Plan (the "Impaired Classes").  As required by § **1129(a)(7)**, all Impaired Classes have: (a) accepted the Plan; (b) have received or retained under the Plan on account of such claim or interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would

---

[1] Unless otherwise indicated, all sections cited in this Confirmation Order refer to sections of title 11 of the United States Code (the "Bankruptcy Code").

receive or retain if the Debtor were liquidated under chapter 7; or (c) have otherwise satisfied the requirements of § 1129(a)(7). Each acceptance of the Plan has been solicited and procured by the Debtor in good faith and in accordance with the provisions of the Bankruptcy Code.

8.      As required by § **1129(a)(8)**, each class of Claims or interests have accepted the Plan, are not impaired under the Plan, or the Debtor has satisfied the requirements of § 1129(b).

9.      As required by § **1129(a)(9)**, except to the extent that the Holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that with respect to a Claim of a kind specified in § 507(a)(2), such Claim shall be paid in full on the later of the date that such Claim becomes an Allowed Claim and the date that payment of such Claim is due in accordance with its terms or in accordance with any applicable provision of the Bankruptcy Code. There are no Claims of the kind specified in §§ 507(a)(1), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7). Except to the extent that the Holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that, with respect to a Claim of a kind specified in § 507(a)(8) or a Claim which would constitute a § 507(a)(8) but for the secured status of such Claim, the Holder of such Claim will be paid in accordance with the terms of § 1129(a)(9)(C) and (D), meaning such Allowed Claims shall be paid monthly payments equal to the total value of such Allowed Claims amortized over the period from the Effective Date to the date which is the fifth (5th) anniversary of the Petition Date and treated in a manner not less favorable than Class Twenty Claims.

10.      As required by § **1129(a)(10)**, at least one class of Claims that is impaired under the Plan has accepted the Plan, as determined without including any acceptance of the Plan by any insider.

11.     As required by § **1129(a)(11)**, confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor.

12.     As required by § **1129(a)(12)**, the Plan provides for the payment on the Effective Date of all UST Fees with respect to the Case.

13.     Sections **1129(a)(13)** through **1129(a)(16)** are inapplicable to the Debtor.

**B.     CONCLUSIONS OF LAW**

1.     The Plan, as amended by the terms of this Confirmation Order, complies with the applicable provisions of the Bankruptcy Code.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

2.     The Plan, a true and correct copy of which is attached hereto as **Exhibit A** and is incorporated herein by reference and, as amended hereby, shall be and hereby is confirmed.

3.     The term "Plan" shall mean the Plan as amended by this Confirmation Order.

4.     The Plan and its provisions shall be binding upon: (a) the Debtor; (b) any entity acquiring or receiving property (including Cash) under the Plan; (c) any lessor or lessee of real or personal property to or from the Debtor; and (d) any creditor of the Debtor, including, without limitation, any governmental unit, as such term is defined in § 101(27), whether or not the Claim or interest of such creditor is impaired under the Plan and whether or not such creditor or governmental unit has accepted the Plan.

5.     In accordance with the relevant provisions of the Plan, the Debtor is hereby authorized, without further order of this Court, to make all distributions and transfers of property required to be made under the Plan.  Except as otherwise expressly provided in § 1141, the Plan, or this Confirmation Order, the consideration to be paid and/or delivered by the Debtor pursuant to the Plan shall be paid and/or delivered, as the case may be, in full and final satisfaction,

settlement, release and discharge as against the Debtor of any and all legal and/or equitable Claims against and interests in and to the Debtor, including, without limitation, any Claim or interest that arose before the Confirmation Date, and any debt of a kind specified in §§ 502(g), 502(h) or 502(i), whether or not: (a) a proof of claim or interest is filed or deemed filed under § 501; (b) such Claim or interest is allowed under § 502; or (c) the Holder of such Claim or interest has accepted the Plan. Except as otherwise expressly provided in § 1141, the Plan or this Confirmation Order, all Claims of creditors against the Debtor whose Claims have attached to, or are secured by, property in which the Debtor has an interest are hereby discharged, and such claims are satisfied in full and forever released and discharged.

6. Except as otherwise expressly provided in the Plan or this Confirmation Order, all property of the Debtor's estate shall, as of the Effective Date, revest in the Debtor free and clear of all interests, liens, claims and encumbrances of any kind and nature whatsoever.

7. Except as otherwise provided in the Plan, as amended by this Confirmation Order, all creditors of the Debtor whose Claims or interests are discharged or whose rights and interests are extinguished or impaired by the Plan and this Confirmation Order, and all persons in concert or participation with them or any of them, are hereby restrained and enjoined from instituting or continuing any action, suit or proceeding, including without limitation, any administrative proceeding or arbitration or proceeding before any quasi-governmental entity, or employing any process to collect any Claims or pursue any interests as liabilities or obligations of the Debtor.

8. The Debtor shall have the right to assume any executory contract or unexpired lease in accordance with the Plan. All executory contracts or unexpired leases so designated to be assumed by the Debtor shall be deemed assumed by the Debtor as of the Confirmation Date, without the payment of any amounts by the Debtor pursuant to § 365(b) (the "Assumed

Contracts"), unless objection thereto is made within twenty (20) days after the Confirmation Date, by filing such objection within said twenty (20) day period and simultaneously serving such objection upon the Debtor. In the event that any objection is filed with respect to such designation, a hearing shall be set by the Court with respect to such designation and any objection thereto, upon the request of the Debtor, and at such date and time to be set by the Court. Any executory contract or unexpired lease of the Debtor not designated to be assumed in accordance with the Plan shall be deemed automatically rejected by the Debtor, without the necessity of further notice or hearing (the "Rejected Contracts") as of the Effective Date. Such rejection shall be deemed to constitute a breach of such contract or lease as of the date immediately before the Petition Date.

9.      If an executory contract or unexpired lease is rejected pursuant to the previous paragraph of this Confirmation Order, then any Claim arising from or as a result of such rejection must be filed with the Bankruptcy Court within forty-five (45) days after the date of the Effective Date or within forty-five (45) days of the date of an Order rejecting the contract or lease at issue. A copy of any such Claim shall be simultaneously served upon counsel for the Debtor. The Debtor shall be entitled to object to the allowance of any such Claim at any time prior. Any Allowed Claim arising from, or as a result of, the rejection of any Rejected Contract shall be classified and treated as an Allowed Class Twenty Claim. Nothing contained in this Confirmation Order shall constitute a determination that any such rejection gives rise to, or results in, a Claim or constitutes a waiver of any objections to such Claim by the Debtor or any party in interest.

10.     The second sentence of § 3.3 of the Plan is hereby deleted in its entirety and replaced with the following, with all other terms set forth in § 3.3 of the Plan remaining unchanged and as set forth in the Plan:

> In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of the 2006 BONY Trust amortized over thirty (30) years at an interest rate of four and one quarter percent (4.25%) with a balloon payment for the remaining amount owed in relation to the Class Two Claim to be made with the one hundred twentieth (120th) payment under the Plan.

11.     The second sentence of § 3.5 of the Plan is hereby deleted in its entirety and replaced with the following, with all other terms set forth in § 3.5 of the Plan remaining unchanged and as set forth in the Plan:

> In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of the 2005 BONY Trust amortized over thirty (30) years at an interest rate of four and one quarter percent (4.25%) with a balloon payment for the remaining amount owed in relation to the Class Four Claim to be made with the one hundred twentieth (120th) payment under the Plan.

12.     The second sentence of § 3.6 of the Plan is hereby deleted in its entirety and replaced with the following, with all other terms set forth in § 3.6 of the Plan remaining unchanged and as set forth in the Plan:

> In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of One West amortized over forty (40) years at an interest rate of five and one quarter percent (5.25%) with a balloon payment for the remaining amount owed in relation to the Class Five Claim to be made with the one hundred twentieth (120th) payment under the Plan.

13.     The second to last sentence of § 3.7 of the Plan is hereby deleted in its entirety and replaced with the following, with all other terms set forth in § 3.7 of the Plan remaining unchanged and as set forth in the Plan:

For purposes of the Plan and for the purpose of making payments under the Plan, 48 Broadway shall have a fair market value of **$325,000.00**.

14.     Section 3.8 of the Plan is hereby deleted in its entirety and replaced with the following:

3.8     **Class Seven**.  The Class Seven Claims are impaired.  In full and final satisfaction of these claims, the Debtor and TD Bank shall perform in accordance with the terms of that certain Order Granting TD Bank, N.A. Relief from the Automatic Stay dated April 19, 2012.

15.     The second sentence of § 3.9 of the Plan is hereby deleted in its entirety and replaced with the following, with all other terms set forth in § 3.9 of the Plan remaining unchanged and as set forth in the Plan:

In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of the 2007 BONY Trust amortized over thirty (30) years at an interest rate of four and one quarter percent (4.25%) with a balloon payment for the remaining amount owed in relation to the Class Eight Claim to be made with the one hundred twentieth (120th) payment under the Plan.

16.     Section 3.10 of the Plan is hereby deleted in its entirety and replaced with the following:

3.10    **Class Nine**.  The Class Nine Claims are impaired.  In full and final satisfaction of these claims, the Debtor and Optima shall perform in accordance with the terms of that certain Order Granting Optima Bank & Trust Company's Motions for Relief from Stay dated April 9, 2012 (the "Optima Order").  Except as provided by the terms of the Optima Order, for purposes of the Plan and for the purpose of making payments under the Plan, Beach Street, Unit 2 and 5 and Beach Street Unit 3 shall have an aggregate value of $400,000.00, allocated among the properties as set forth in the Optima Order.

17.     Section 3.15 of the Plan is hereby deleted in its entirety and replaced with the following:

3.8     **Class Fourteen**.  The Class Fourteen Claims are impaired.  In full and final satisfaction of these claims, the Debtor and the Deutsche Trust shall perform in accordance with the terms of that certain Order Granting

> Motion by Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2005-2 for Relief from the Automatic Stay.

18.     **Exhibit A** to the Plan is hereby amended to reflect the amendments to the Plan as set forth herein.

19.     The Debtor shall: (a) make payment to Central Maine Power ("CMP") within two (2) business days after the date of this Order for any and all outstanding amounts invoiced by CMP through the date of the entry of this Order for services provided to the Debtor by CMP from the Petition Date; (b) the Debtor shall be responsible for contacting CMP to terminate service relating to any real property owned by the Debtor as of the Petition Date and the Debtor shall remain responsible for all charges made to any terminated accounts up through (and including) the service cut-off date, and all such charges shall constitute and are hereby allowed as administrative expenses under 11 U.S.C. §§ 507(a)(2) and 503(b); (c) all CMP invoices rendered after the date of entry of this Order shall be paid according to terms in the ordinary course of the Debtor's business; and (d) after confirmation, the Debtor will fund a deposit with CMP equal to $3,418 (the "Post-Confirmation Deposit").  The amount of the Post-Confirmation Deposit will be reduced as follows should the Debtor terminate service at any of the following accounts within thirty (30) days after the date of entry of this Order:

| CMP Acct. No. | Property Location | Deposit Amount |
| --- | --- | --- |
| 449-0239912-018 | York St., Unit 19, York, ME | $132.00 |
| 446-0379883-003 | 35 York St., York, ME | $291.00 |
| 449-0236032-035 | 35B York St., York, ME | $274.00 |

The amount of any adequate assurance deposits made by the Debtor to CMP shall be applied against the Post-Confirmation Deposit amount.  The remaining amount of the Post-Confirmation

Deposit shall be funded within two months after the confirmation date, the first half within thirty (30) days and the second half within sixty (60) days.

20.     This Court shall retain jurisdiction over the Case after the Effective Date for all of the purposes set forth in the Plan, and including jurisdiction to hear and determine any action or proceeding seeking to compel the Debtor to comply with its obligations under the Plan.

21.     After the entry of this Confirmation Order, the Debtor may modify the Plan under § 1127 and may remedy any defect or omission or reconcile any inconsistency in the Plan or in this Confirmation Order in such manner as may be necessary or appropriate to carry out the purposes and intent of the Plan, so long as the interests of Holders of Claims and interests are not materially and adversely affected thereby.  Any party-in-interest may object to any such modification that adversely affects its interest.  Upon such objection, this Court shall determine if such modification is permissible.

22.     The Post-Petition Bar Date shall be as set forth in the Plan.  Notwithstanding anything to the contrary in the Bankruptcy Code, any and all motions, applications and/or proofs of claims seeking approval and/or payment of Professional Fees and Expenses and Administrative Claims which have accrued prior to and on the Confirmation Date shall be filed with the Court on or prior to the Post-Petition Bar Date.

23.     The Effective Date shall be the date calculated in accordance with the definition of Effective Date as provided in the Plan.

24.     In the event of any conflict between the provisions of this Confirmation Order and the provisions of the Plan, the provisions of this Confirmation Order shall prevail and take precedence over the provisions of the Plan.

25.     For purposes of § 1101(2), the Plan shall be deemed to have been substantially consummated when all of the following conditions have been satisfied: (a) the Effective Date has occurred; (b) all documents required to be executed and delivered under and pursuant to the Plan, if any, have been executed and delivered; and (c) all requirements of § 1101(2) have been satisfied, or the Court enters an order determining that the Plan is substantially consummated upon a motion of any party in interest.  Premised on the timing of the distributions to be made under the Plan, cause exists to extend the date for substantial consummation beyond the one hundred and twenty (120) day period provided for by D. Me. LBR 3020-1.

26.      In accordance with D. Me. L.B.R. 3022-1, the Debtor, through Bernstein Shur, shall file a final account scheduling all disbursements, an application for a final decree, and a proposed final decree within sixty (60) days of the Effective Date (an extension beyond the one hundred and twenty (120) days provided for in D. Me. L.B.R. 3022-1 is warranted in this case due to the timing of payments under the Plan).  The Debtor anticipates that the costs and expenses relating to complying with this rule will be approximately $1,500.00.

27.     Nothing in the Plan or this Confirmation Order discharges, releases, modifies, satisfies, retires, or cancels any debt owed by Harold E. Anderson, Lorri A. O'Brien, and Donald Rivers (collectively, the "Individuals") to Bangor Savings Bank ("BSB") as evidenced by a certain promissory note dated May 13, 2008 in the amount of $50,000 (the "Debt"), as such Debt relates to the Individuals.  Further,  nothing in the Plan or this Confirmation Order enjoins or otherwise bars BSB from asserting or enforcing the Debt against the Individuals, except that: (a) any payments made by the Individuals to BSB shall reduce the Debt owed by the Debtor; and (b) any payments made by the Debtor to BSB shall reduce the Debt owed by the Individuals.

DATED:  April 30, 2012

/s/ James B. Haines, Jr.
The Honorable James B. Haines, Jr.
United States Bankruptcy Judge



**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

In re:

LAO PROPERTIES, LLC,

                Debtor.

Chapter 11

Case No. 11-21571

**PLAN OF REORGANIZATION OF LAO PROPERTIES, LLC**
**DATED MARCH 2, 2012**

LAO Properties, LLC, a debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), hereby proposes this Plan of Reorganization Dated March 2, 2012 (the "Plan") to all of its known creditors and holders of interests as authorized by § 1121(a) of title 11 of the United States Code (the "Bankruptcy Code"),[1] and moves this Court to enter an order confirming this Plan pursuant to § 1129, including § 1129(b) if required.

**ARTICLE I**
**Definitions**

The following terms when used in this Plan shall, unless the context otherwise requires, have the following respective meanings:

1.1    "2005 BONY Trust" shall mean The Bank of New York Mellon, f/k/a The Bank of New York, as trustee for the holders of the Certificates, First Horizon Mortgage Pass-Through Certificates FHAMS 2005-FA10, and its predecessors and successors in interest.

1.2    "2006 BONY Trust" shall mean The Bank of New York Mellon, f/k/a The Bank of New York, as trustee for the holders of the Certificates, First Horizon Mortgage Pass-Through Certificates 2006-FA6 30 Yr, and its predecessors and successors in interest.

1.3    "2007 BONY Trust" shall mean The Bank of New York Mellon, f/k/a The Bank of New York, as trustee for the holders of the Certificates, First Horizon

---

[1] Unless otherwise indicated, all statutory citations refer to sections of the Bankruptcy Code.

Mortgage Pass-Through Certificates FHAMS 2007-AA3, and its predecessors and successors in interest.

1.4 "3 Ravine Avenue" shall mean the real property owned by the Debtor and generally located at 3 Ravine Avenue in York, Maine.

1.5 "31 Ocean Avenue" shall mean the real property owned by the Debtor and generally located at 31 Ocean Avenue Extension in York, Maine.

1.6 "35 York Street" shall mean the real property owned by the Debtor and generally located at 35 York Street in York, Maine.

1.7 "48 Broadway" shall mean the real property owned by the Debtor and generally located at 48 Broadway in York, Maine.

1.8 "67 Ocean Avenue" shall mean the real property owned by the Debtor and generally located at 67 Ocean Avenue Extension in York, Maine.

1.9 "80 Ocean Avenue" shall mean the real property owned by the Debtor and generally located at 80 Ocean Avenue Extension in York, Maine.

1.10 "83 Ocean Avenue" shall mean the real property owned by the Debtor and generally located at 83 Ocean Avenue Extension in York, Maine.

1.11 "9 Kendall Road" shall mean the real property owned by the Debtor and generally located at 9 Kendall Road in York, Maine.

1.12 "Administrative Claim" shall mean an expense of the kind described in § 503(b).

1.13 "AKR" shall mean AKR Management, LLC.

1.14 "Allowed" shall mean, with respect to any Claim, the status of the Claim, such that: (a) upon expiration of the Claims Objection Date, the Claim, whether filed or scheduled, has not been disputed; or (b) with respect to Disputed Claims, a Final Order allowing the Claim has been entered.

1.15 "Allowed Amount" of a Claim shall mean, for the purposes of the Plan: (a) the amount of the Claim scheduled by the Debtor if (i) the Claim is not scheduled as disputed, contingent or unliquidated by the Debtor, (ii) no objection to that amount is filed by the Claims Objection Date, and (iii) the Holder of the Claim has not timely filed a properly prepared proof of Claim in an amount different than that scheduled by the Debtor; (b) the amount set forth by the Holder of a Claim in a timely filed and properly prepared proof of Claim if that amount differs from the amount scheduled by the Debtor and no objection to the amount stated in the proof of Claim is filed by the Claims Objection Date; or (c) the amount of such Claim established by a Final Order of the Bankruptcy Court if (i)

such Claim is scheduled by the Debtor as contingent or disputed, (ii) an objection to that amount is filed on or before the Claims Objection Date, or (iii) if the amount set forth by the Holder of such Claim in a timely filed, properly prepared proof of Claim differs from the amount scheduled by the Debtor and an objection is filed to the proof of Claim on or before the Claims Objection Date.

1.16 "Allowed Secured Claim" shall mean an Allowed Claim arising on or before the Petition Date that is secured by a valid Lien on property of the Debtor which is not void or avoidable under any state or federal law, including any provision of the Bankruptcy Code.

1.17 "Annual Net Operating Revenue" shall mean (a) the gross proceeds generated by the Real Property for the applicable year; **plus** (b) any and all amounts collected by the Debtor in relation to any Post-Confirmation Causes of Action; **minus** the following:

    a.    Amounts paid to satisfy Unclassified Claims under this Plan (see Article III);

    b.    Amounts paid in accordance with this Plan to satisfy the Claims in Classes One through Nineteen of this Plan;

    c.    Amounts needed to fund ordinary and necessary expenses of operating the Real Property, including in the categories identified in the cash plan (the "Cash Plan") attached to the Plan as **Exhibit A** (with the recognition that the amounts set forth on the Cash Plan may require adjustment over time) and amounts needed for an operating reserve that will allow payments under the Plan from the date of the payment to Unsecured Claimants through the June 1 of each year; and

    d.    Extraordinary expenses for repair and maintenance of the Real Property.

1.18 "Assets" shall mean all property that would be property of the Debtor and the Debtor's estate under § 541, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, all Post-Confirmation Causes of Action and all proceeds and recoveries on Post-Confirmation Causes of Action, all accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate.

1.19 "Bankruptcy Code" shall mean title 11 of the United States Code, as in effect with respect to the Case on the Petition Date. All Bankruptcy Code references herein are to the Bankruptcy Code in effect as of the Petition Date, unless otherwise stated.

1.20  "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Maine.

1.21  "Bar Date" shall mean the date established by the Bankruptcy Court as the deadline for creditors to file proofs of Claim.

1.22  "Beach Street, Units 2 and 5" shall mean the real property owned by the Debtor and generally located at 2 Beach Street, Units 2 and 5, in York, Maine.

1.23  "Beach Street, Unit 3" shall mean the real property owned by the Debtor and generally located at 2 Beach Street, Unit 3, in York, Maine.

1.24  "BOM" shall mean The Bank of Maine, f/k/a Savings Bank of Maine, and its predecessors and successors in interest.

1.25  "BSB" shall mean Bangor Savings Bank, and its predecessors and successors in interest.

1.26  "Case" or "Chapter 11 Case" shall mean the Debtor's chapter 11 case.

1.27  "Cash" shall mean payment, including by check, issued by or on behalf of the Debtor with respect to any payment of funds required to be made pursuant to the Plan.

1.28  "Claim" shall have the meaning set forth in § 101(5) and shall include, without limitation, all rights to payment from the Debtor.

1.29  "Claimant" shall mean any individual or entity making or holding a Claim against the Debtor.

1.30  "Claims Objection Date" shall mean, with respect to Claims not subject to the Post-Petition Bar Date, the date that is ninety (90) days from the last to occur of: (a) the Bar Date; or (b) with respect to a specified Claim for which a creditor is allowed to file a proof of Claim after the Bar Date, twenty (20) days after the date on which such proof of Claim is filed; or (c) the Confirmation Date. The failure to object to a Claim by the Claims Objection Date shall not constitute a waiver, acceptance or release of any Claim or Post-Confirmation Cause of Action against a creditor, including any Post-Confirmation Cause of Action based on a creditor receiving preferential or fraudulent transfers under §§ 547 or 548.

1.31  "Confirmation Date" shall mean the date on which the Bankruptcy Court order confirming the Plan, as the same may be amended, becomes a Final Order.

1.32  "Confirmation Hearing" shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as the same may be amended, and as contemplated by § 1128(a).

1.33 "<u>Confirmation Order</u>" shall mean the Final Order entered by the Bankruptcy Court confirming the Plan pursuant to § 1129.

1.34 "<u>DDP</u>" shall mean DDP Florida Investments, LLC, and its predecessors and successors in interest.

1.35 "<u>Debtor</u>" shall mean LAO Properties, LLC.

1.36 "<u>Destefano</u>" shall mean Destefano & Associates, Inc., and its predecessors and successors in interest

1.37 "<u>Deutsche Trust</u>" shall mean Deutsche Bank National Trust Company, as Indenture Trustee of the American Home Mortgage Investment Trust 2005-2, and its predecessors and successors in interest.

1.38 "<u>Disclosure Statement</u>" shall mean that certain disclosure statement filed by the Debtor in respect of the Plan and approved as containing adequate information pursuant to a Final Order of the Bankruptcy Court.

1.39 "<u>Effective Date</u>" shall mean the date that is one hundred twenty (120) days after the Confirmation Date, provided that all the conditions set forth in the Plan have been satisfied. If an order staying confirmation of the Plan has been entered, the Effective Date shall mean the earlier of the first business day following the date upon which (a) the order confirming the Plan has become a Final Order or (b) any stay of confirmation of the Plan is no longer effective, provided that such business day is more than one hundred twenty (120) days after the Confirmation Date.

1.40 "<u>Encumbrances</u>" shall mean all Liens, encumbrances, mortgages, hypothecations, pledges, and security interests of any kind whatsoever.

1.41 "<u>Estate</u>" shall mean the bankruptcy estate of the Debtor, as it was created in the Case pursuant to § 541, including as such Estate may be continued or preserved under the Plan.

1.42 "<u>Executory Contract</u>" shall mean an executory contract within the meaning of § 365.

1.43 "<u>Final Order</u>" shall mean an order of a court of competent jurisdiction with respect to which all periods for taking appeal from such order or any order of an appellate court relating to such order have expired with no appeal pending and no stay of such order being then in effect.

1.44 "<u>First Horizon</u>" shall mean First Horizon Home Loan Corporation, and its predecessors and successors in interest.

1.45 "Holder" shall mean a creditor holding, including by assignment, a Claim against the Estate.

1.46 "Lien" shall mean any mortgage, lien, Claim, interest, encumbrance, security interest, restriction, charge or assessment, of every kind, nature and description, against, in or upon Assets, whether recorded or unrecorded, fixed or contingent, perfected or unperfected, possessory or non-possessory, known or unknown, and, without limiting the foregoing, shall include the meaning set forth in § 101(37).

1.47 "MERS-Nation One" shall mean Mortgage Electronic Registration Systems, acting solely as nominee for Nation One Mortgage Company, Inc., and its predecessors and successors in interest

1.48 "Nuzzo" shall mean Steve Nuzzo, and his predecessors and successors in interest.

1.49 "Old School" shall mean Old School Financial, Inc., and its predecessors and successors in interest.

1.50 "One West" shall mean One West Bank, FSB, and its predecessors and successors in interest.

1.51 "Optima" shall mean Optima Bank & Trust Company, and its predecessors and successors in interest.

1.52 "Petition Date" shall mean November 1, 2011.

1.53 "Plan" shall mean the Debtor's Plan of Reorganization Dated March 2, 2012, as it may be amended or modified by the Debtor from time to time, together with all exhibits, schedules and other attachments thereto, as the same maybe amended or modified by the Debtor from time to time, all of which are incorporated herein by reference.

1.54 "Post-Confirmation Causes of Action" shall mean: (a) any and all causes of action belonging to the Debtor or the Estate, whether arising before or after the Petition Date and whether arising under state or federal law, constituting causes of action under §§ 544 to 553 (including any state fraudulent conveyance statute by virtue of § 544); (b) any other causes of action of the Debtor; and (c) any and all proceeds, whether in the form of cash or otherwise, from any recoveries on or settlements of such causes of action.

1.55 "Post-Petition Bar Date" shall mean the date which is sixty (60) days following the Confirmation Date.

1.56 "Powder Mill" shall mean Powder Mill Road Property Management, LLC, and its predecessors and successors in interest.

1.57 "<u>Priority Claim</u>" means an Allowed Unsecured Claim, other than an Administrative Claim, granted a priority under § 507.

1.58 "<u>Pro Rata</u>" means proportionate, so that, for example, the ratio of the consideration distributed on account of an Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the consideration distributed on account of all Allowed Claims in such class of Claims to the amount of all Allowed Claims in the class.

1.59 "<u>Professional Fees and Expenses</u>" shall mean Allowed Administrative Claims of the professionals hired by the Debtor.

1.60 "<u>Provident</u>" shall mean Provident Funding Associates, LP, and its predecessors and successors in interest.

1.61 "<u>Real Property</u>" shall mean all of the real property owned by the Debtor (i.e., 31 Ocean Avenue, 67 Ocean Avenue, 80 Ocean Avenue, 83 Ocean Avenue, 3 Ravine Avenue, 35 York Street, 48 Broadway, 9 Kendall Road, Beach Street, Units 2 and 5, Beach Street, Unit 3).

1.62 "<u>RBS</u>" shall mean Mary K. Rivers, d/b/a Rivers by the Sea.

1.63 "<u>Secured Claim</u>" shall mean a Claim secured by a valid Lien on property of the Debtor which is not void or avoidable under any state or federal law, including any provision of the Bankruptcy Code.

1.64 "<u>Sewer District</u>" shall mean the York Sewer District in York, Maine.

1.65 "<u>Substantial Consummation</u>" shall have the meaning assigned to such term in § 1101(2).

1.66 "<u>TD Bank</u>" shall mean TD Bank, N.A., f/d/b/a People's Heritage Bank, N.A., and its predecessors and successors in interest

1.67 "<u>Unclassified Claims</u>" shall have the meaning assigned to such term in Article II of the Plan.

1.68 "<u>Unsecured Claim</u>" shall mean a Claim that is: (a) not an Unclassified Claim; and (b) not secured by a valid Lien on property of the Debtor which is not void or avoidable under any state or federal law, including any provision of the Bankruptcy Code and shall include deficiency Claims related to Secured Claims.

1.69 "<u>UST Fees</u>" shall mean the quarterly fees paid and payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).

1.70 "<u>York</u>" shall mean the Town of York, Maine.

## ARTICLE II
## Classification of Claims and Interests

Each Holder of (a) a Claim against the Debtor of whatever nature, whether or not scheduled and whether unliquidated, absolute or contingent, including all Claims arising from the rejection of leases and executory contracts, or (b) any equity interests in the Debtor, shall be bound by the provisions of the Plan, and all such Claims and interests are hereby classified as follows:

2.1 **Unclassified Claims** shall consist of: (a) all Administrative Claims, including, without limitation, Professional Fees and Expenses; (b) Priority Claims; and (c) UST Fees.

2.2 **Class One** shall consist of the Allowed Secured Claims held by Old School against the Debtor or against any Assets of the Debtor.

2.3 **Class Two** shall consist of the Allowed Secured Claims held by the 2006 BONY Trust against the Debtor or against any Assets of the Debtor.

2.4 **Class Three** shall consist of the Allowed Secured Claims held by Powder Mill against the Debtor or any Assets of the Debtor.

2.5 **Class Four** shall consist of the Allowed Secured Claims held by the 2005 BONY Trust against the Debtor or any Assets of the Debtor.

2.6 **Class Five** shall consist of the Allowed Secured Claims held by One West against the Debtor or any Assets of the Debtor.

2.7 **Class Six** shall consist of the Allowed Secured Claims held by Provident against the Debtor or any Assets of the Debtor.

2.8 **Class Seven** shall consist of the Allowed Secured Claims held by TD Bank against the Debtor or any Assets of the Debtor.

2.9 **Class Eight** shall consist of all Allowed Secured Claims held by the 2007 BONY Trust against the Debtor or any Assets of the Debtor.

2.10 **Class Nine** shall consist of all Allowed Secured Claims held by Optima against the Debtor or any Assets of the Debtor.

2.11 **Class Ten** shall consist of all Allowed Secured Claims held by DDP against the

Debtor or any Assets of the Debtor.

2.12 **Class Eleven** shall consist of all Allowed Secured Claims held by First Horizon against the Debtor or any Assets of the Debtor.

2.13 **Class Twelve** shall consist of all Allowed Secured Claims held by MERS-Nation One against the Debtor or any Assets of the Debtor.

2.14 **Class Thirteen** shall consist of all Allowed Secured Claims held by BSB against the Debtor or any Assets of the Debtor.

2.15 **Class Fourteen** shall consist of all Allowed Secured Claims held by the Deutsche Trust against the Debtor or any Assets of the Debtor.

2.16 **Class Fifteen** shall consist of all Allowed Secured Claims held by BOM against the Debtor or any Assets of the Debtor.

2.17 **Class Sixteen** shall consist of all Allowed Secured Claims held by Nuzzo against the Debtor or any Assets of the Debtor.

2.18 **Class Seventeen** shall consist of all Allowed Secured Claims held by Destefano against the Debtor or any Assets of the Debtor.

2.19 **Class Eighteen** shall consist of any and all Allowed Claims of the Sewer District, including both Allowed Secured Claims and Allowed Unsecured Claims, arising out of or relating to sewer assessments owed by the Debtor in relation to the Real Property.

2.20 **Class Nineteen** shall consist of any and all Allowed Claims of York, including both Allowed Secured Claims and Allowed Unsecured Claims, arising out of or relating to real or personal property taxes owed by the Debtor in relation to the Real Property.

2.21 **Class Twenty** shall consist of all Allowed Unsecured Claims against the Debtor (unless separately classified).

2.22 **Class Twenty-One** shall consist of the equity interests of Lorri O'Brien, Paul O'Brien, and AKR in the Debtor.

## ARTICLE III
### Treatment of Claims and Interests

**A.** **Unclassified Claims**

3.1 **Unclassified Claims**. Unclassified Claims against the Debtor are unimpaired. All Administrative Claims, including Professional Fees and Expenses and UST Fees,

shall be paid in full, unless payment terms are subject to a separate Order of the Bankruptcy Court, on the later of: (a) the Effective Date; (b) the date on which each such Claim becomes an Allowed Claim; or (c) in accordance with such terms as may be agreed upon by the Debtor and each such Holder of an Administrative Claim. All UST Fees will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any UST Fees owed on or before the Effective Date will be paid on the Effective Date.

All Priority Claims, other than Claims under § 507(a)(8), shall be paid (a) in accordance with the terms of the Bankruptcy Code, or (b) in accordance with such terms as may be agreed upon by the Debtor and each Holder of such Priority Claim.

All Claims under § 507(a)(8) shall be paid (a) in accordance with the terms of § 1129(a)(9)(C), meaning such Allowed Claims shall be paid monthly payments equal to the total value of such Allowed Claims amortized over the period from the Effective Date to the date which is the fifth (5th) anniversary of the Petition Date with such Allowed Claims accruing interest at the rate of seven percent (7%) with interest starting to accrue on the later of the Effective Date or the date that the amount of the Allowed Claim has been finally determined by agreement of the Debtor and the Holder of such Claim or through a Final Order of the Bankruptcy Court and with the first (1st) payment being made on the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Claim has been finally determined by agreement of the Debtor and the Holder of such Claim or through a Final Order of the Bankruptcy Court and with each successive payment being made on the tenth (10th) day of each successive month and with the last payment being made for the remaining balance on the fifth (5th) anniversary of the Petition Date; or (b) in accordance with such terms as may be agreed upon by the Debtor and each such Holder of a Claim under § 507(a)(8).

B.    **Classified Claims**

The treatment of classified Claims under the Plan will be as follows:

3.2    **Class One**. The Class One Claims are impaired. In full and final satisfaction of these Claims, the Debtor and Old School shall perform in accordance with the terms of that certain Order Granting Old School Financial, Inc.'s Motion for Relief from Stay dated January 27, 2012 (the "Old School Order"). Except as provided for by the terms of the Old School Order in relation to the Claims of Old School, for purposes of the Plan and for the purpose of making payments under the Plan, 31 Ocean Avenue shall have a fair market value of **$653,000.00**.

3.3    **Class Two**. The Class Two Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of the 2006 BONY Trust amortized over forty (40) years at

an interest rate of four and one-quarter percent (4.25%) with a balloon payment for the remaining amount owed in relation to the Class Two Claim to be made with the one hundred twentieth (120th) payment under the Plan. The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and the 2006 BONY Trust or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and the 2006 BONY Trust or through a Final Order of the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. For purposes of the Plan and for the purpose of making payments under the Plan, 67 Ocean Avenue shall have a fair market value of **$915,000.00**. In the event the Debtor and the 2006 BONY Trust agree or the Court determines that some or all of the Claims of the 2006 BONY Trust constitute Allowed Unsecured Claims, such claims shall constitute Class Twenty Claims.

3.4    **Class Three**. The Class Three Claims are impaired. In full and final satisfaction of these Claims, the Debtor and Powder Mill shall perform in accordance with the terms of that certain Order Granting Powder Mill Road Property Management, LLC's Motion for Relief from Stay dated January 27, 2012 (the "Powder Mill Order"). Except as provided for by the terms of the Powder Mill Order in relation to the Claims of Powder Mill, for purposes of the Plan and for the purpose of making payments under the Plan, 80 Ocean Avenue shall have a fair market value of **$963,000.00**.

3.5    **Class Four**. The Class Four Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of the 2005 BONY Trust amortized over forty (40) years at an interest rate of four and one-quarter percent (4.25%) with a balloon payment for the remaining amount owed in relation to the Class Four Claims to be made with the one hundred twentieth (120th) payment under the Plan. The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and the 2005 BONY Trust or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and the 2005 BONY Trust or through a Final Order of the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the

one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. For purposes of the Plan and for the purpose of making payments under the Plan, 83 Ocean shall have a fair market value of **$736,000.00**. In the event the Debtor and the 2005 BONY Trust agree or the Court determines that some or all of the Claims of the 2005 BONY Trust constitute Allowed Unsecured Claims, such claims shall constitute Class Twenty Claims.

3.6    **Class Five**. The Class Five Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of One West amortized over forty (40) years at an interest rate of four and one-quarter percent (4.25%) with a balloon payment for the remaining amount owed in relation to the Class Five Claims to be made with the one hundred twentieth (120th) payment under the Plan. The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and One West or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and One West or through a Final Order of the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. For purposes of the Plan and for the purpose of making payments under the Plan, 3 Ravine Avenue shall have a fair market value of **$363,000.00**. In the event the Debtor and One West agree or the Court determines that some or all of the Claims of One West constitute Allowed Unsecured Claims, such claims shall constitute Class Twenty Claims.

3.7    **Class Six**. The Class Six Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of Provident amortized over forty (40) years at an interest rate of four and one-quarter percent (4.25%) with a balloon payment for the remaining amount owed in relation to the Class Six Claims to be made with the one hundred twentieth (120th) payment under the Plan. The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and Provident or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and Provident or through a Final Order of

the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. For purposes of the Plan and for the purpose of making payments under the Plan, 48 Broadway shall have a fair market value of **$293,000.00**. In the event the Debtor and Provident agree or the Court determines that some or all of the Claims of Provident constitute Allowed Unsecured Claims, such claims shall constitute Class Twenty Claims.

3.8 **Class Seven**. The Class Seven Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of TD Bank amortized over forty (40) years at an interest rate of four and one-quarter percent (4.25%) with a balloon payment for the remaining amount owed in relation to the Class Seven Claims to be made with the one hundred twentieth (120th) payment under the Plan. The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and TD Bank or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and TD Bank or through a Final Order of the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. For purposes of the Plan and for the purpose of making payments under the Plan, 35 York Street shall have a fair market value of **$487,000.00**. In the event the Debtor and TD Bank agree or the Court determines that some or all of the Claims of TD Bank constitute Allowed Unsecured Claims, such claims shall constitute Class Twenty Claims.

3.9 **Class Eight**. The Class Eight Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of the 2007 BONY Trust amortized over forty (40) years at an interest rate of three and four-tenths percent (3.4%) with a balloon payment for the remaining amount owed in relation to Class Eight Claims to be made with the one hundred twentieth (120th) payment under the Plan. The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and the 2007 BONY Trust or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of

the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and the 2007 BONY Trust or through a Final Order of the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. For purposes of the Plan and for the purpose of making payments under the Plan, 9 Kendall Road shall have a fair market value of **$438,000.00**. In the event the Debtor and the 2007 BONY Trust agree or the Court determines that some or all of the Claims of the 2007 BONY Trust constitute Allowed Unsecured Claims, such claims shall constitute Class Twenty Claims.

3.10 **Class Nine**. The Class Nine Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of Optima amortized over forty (40) years at an interest rate of four and one-quarter percent (4.25%) with a balloon payment for the remaining amount owed in relation to the Class Nine Claims to be made with the one hundred twentieth (120th) payment under the Plan. The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and Optima or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and Optima or through a Final Order of the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. For purposes of the Plan and for the purpose of making payments under the Plan, the fair market value of Beach Street, Units 2 and 5 shall be **$160,000.00,** and the fair market value of Beach Street, Unit 3 shall be **$80,000.00**. In the event the Debtor and Optima agree or the Court determines that some or all of the Claims of Optima constitute Allowed Unsecured Claims, such claims shall constitute Class Twenty Claims.

3.11 **Class Ten**. The Class Ten Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of DDP amortized over thirty (30) years at an interest rate of five percent (5%) with a balloon payment for the remaining amount owed in relation to the Class Ten Claims to be made with the one hundred twentieth (120th) payment under the Plan. The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the

amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and DDP or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and DDP or through a Final Order of the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. For purposes of the Plan and for the purpose of making payments under the Plan, 31 Ocean Avenue shall have a fair market value of **$653,00.00**, 67 Ocean Avenue shall have a fair market value of **$915,000.00**, and 9 Kendall Road shall have a fair market value of **$438,000.00**. In the event the Debtor and DDP agree or the Court determines that some or all of the Claims of DDP constitute Allowed Unsecured Claims, such claims shall constitute Class Twenty Claims.

3.12 **Class Eleven**. The Class Eleven Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of First Horizon amortized over thirty (30) years at an interest rate of five percent (5%) with a balloon payment for the remaining amount owed in relation to Class Eleven Claims to be made with the one hundred twentieth (120th) payment under the Plan. The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and First Horizon or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and First Horizon or through a Final Order of the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. For purposes of the Plan and for the purpose of making payments under the Plan, 83 Ocean Avenue shall have a fair market value of **$736,000.00**. In the event the Debtor and First Horizon agree or the Court determines that some or all of the Claims of First Horizon constitute Allowed Unsecured Claims, such claims shall constitute Class Twenty Claims.

3.13 **Class Twelve**. The Class Twelve Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of MERS-Nation One amortized over thirty (30) years at an interest rate of five percent (5%) with a balloon payment for the remaining amount owed in relation to the Class Twelve Claims to be made with the

one hundred twentieth (120th) payment under the Plan. The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and MERS-Nation One or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and MERS-Nation One or through a Final Order of the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. For purposes of the Plan and for the purpose of making payments under the Plan, 3 Ravine Avenue shall have a fair market value of **$363,000.00**. In the event the Debtor and MERS-Nation One agree or the Court determines that some or all of the Claims of MERS-Nation One constitute Allowed Unsecured Claims, such claims shall constitute Class Twenty Claims.

3.14 **Class Thirteen**. The Class Thirteen Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of BSB amortized over thirty (30) years at an interest rate of five percent (5%) with a balloon payment for the remaining amount owed in relation to the Class Thirteen Claims to be made with the one hundred twentieth (120th) payment under the Plan. The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and BSB or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and BSB or through a Final Order of the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. For purposes of the Plan and for the purpose of making payments under the Plan, 31 Ocean Avenue shall have a fair market value of **$653,000.00**, 67 Ocean Avenue shall have a fair market value of **$915,000.00**, 80 Ocean Avenue shall have a fair market value of **$963,000.00**, 83 Ocean Avenue shall have a fair market value of **$736,000.00**, 3 Ravine Avenue shall have a fair market value of **$363,000.00**, 35 York Street shall have a fair market value of **$487,000.00**, 48 Broadway shall have a fair market value of **$293,000.00**, and Beach Street, Unit 3 shall have a fair market value of **$80,000.00**. In the event the Debtor and BSB agree or the Court

determines that some or all of the Claims of BSB constitute Allowed Unsecured Claims, such claims shall constitute Class Twenty Claims.

3.15 **Class Fourteen**. The Class Fourteen Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of the Deutsche Trust amortized over thirty (30) years at an interest rate of five percent (5%) with a balloon payment for the remaining amount owed in relation to the Class Fourteen Claims to be made with the one hundred twentieth (120th) payment under the Plan. The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and the Deutsche Trust or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and the Deutsche Trust or through a Final Order of the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. For purposes of the Plan and for the purpose of making payments under the Plan, 35 York Street shall have a fair market value of **$487,000.00**. In the event the Debtor and the Deutsche Trust agree or the Court determines that some or all of the Claims of the Deutsche Trust constitute Allowed Unsecured Claims, such claims shall constitute Class Twenty Claims.

3.16 **Class Fifteen**. The Class Fifteen Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of BOM amortized over thirty (30) years at an interest rate of five percent (5%) with a balloon payment for the remaining amount owed in relation to the Class Fifteen Claims to be made with the one hundred twentieth (120th) payment under the Plan. The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and BOM or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and BOM or through a Final Order of the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. For purposes of the Plan and for the purpose of making payments under the Plan,

31 Ocean Avenue shall have a fair market value of **$653,000.00**, 67 Ocean Avenue shall have a fair market value of **$915,000.00**, 80 Ocean Avenue shall have a fair market value of **$963,000.00**, 83 Ocean Avenue shall have a fair market value of **$736,000.00**, 3 Ravine Avenue shall have a fair market value of **$363,000.00**, 35 York Street shall have a fair market value of **$487,000.00**, 48 Broadway shall have a fair market value of **$293,000.00**, and Beach Street, Unit 3 shall have a fair market value of **$80,000.00**. In the event the Debtor and BOM agree or the Court determines that some or all of the Claims of BOM constitute Allowed Unsecured Claims, such claims shall constitute Class Twenty Claims.

3.17 **Class Sixteen**. The Class Sixteen Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of Nuzzo amortized over thirty (30) years at an interest rate of five percent (5%) with a balloon payment for the remaining amount owed in relation to the Class Sixteen Claims to be made with the one hundred twentieth (120th) payment under the Plan. The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and Nuzzo or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and Nuzzo or through a Final Order of the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. For purposes of the Plan and for the purpose of making payments under the Plan, 83 Ocean Avenue shall have a fair market value of **$736,000.00**. In the event the Debtor and Nuzzo agree or the Court determines that some or all of the Claims of Nuzzo constitute Allowed Unsecured Claims, such claims shall constitute Class Twenty Claims.

3.18 **Class Seventeen**. The Class Seventeen Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Secured Claim of Destefano amortized over thirty (30) years at an interest rate of five percent (5%) with a balloon payment for the remaining amount owed in relation to the Class Seventeen Claims to be made with the one hundred twentieth (120th) payment under the Plan. The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and Destefano or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been

finally determined by agreement of the Debtor and Destefano or through a Final Order of the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. For purposes of the Plan and for the purpose of making payments under the Plan, Beach Street, Units 2 and 5 shall have a fair market value of **$160,000.00**, and Beach Street, Unit 3 shall have a fair market value of **$80,000.00**. In the event the Debtor and Destefano agree or the Court determines that some or all of the Claims of Destefano constitute Allowed Unsecured Claims, such claims shall constitute Class Twenty Claims.

3.19 **Class Eighteen**. The Class Eighteen Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall make monthly payments equal to the amount of the Allowed Claims of the Sewer District amortized over five (5) years at an interest rate of four and one-quarter percent (4.25%). The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and the Sewer District or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and the Sewer District or through a Final Order of the Bankruptcy Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date. The Sewer District shall return any security deposits made by the Debtor pursuant to § 366 on the Confirmation Date.

3.20 **Class Nineteen**. The Class Nineteen Claims are impaired. In full and final satisfaction of these Claims, the Debtor shall pay such Allowed Claims in accordance with the terms of § 1129(a)(9)(D). The Debtor shall make monthly payments to York equal to the total value of such Allowed Claims amortized over the period from the Effective Date to the date which is the fifth (5th) anniversary of the Petition Date, with such Allowed Claims accruing interest at the rate of seven percent (7%, pursuant to 36 M.R.S. § 505). The first monthly payment under the Plan shall be made on the later of the tenth (10th) day of the first (1st) month following the Effective Date or the tenth (10th) day of the first (1st) month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and York or through a Final Order of the Bankruptcy Court. Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and York or through a Final Order of the Bankruptcy

Court. Each successive monthly payment shall be made on the tenth (10th) day of each successive month after the month the first (1st) payment is made until the balloon payment is made with the one hundred twentieth (120th) payment. Any property which secures the Allowed Secured Claim as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date.

3.21 **Class Twenty**. The Class Twenty Claims are impaired. In full and final satisfaction of these Claims, each Claimant shall receive a <u>Pro Rata</u> distribution of the Annual Net Operating Revenue, with the first (1st) distribution being made on or before the first January 31 occurring after the Effective Date. Annual payments shall be made as provided for herein for a period of seven (7) years. Any utility holding an adequate assurance deposit shall return the deposit to the Debtor on the Confirmation Date.

3.22 **Class Twenty-One**. The interests in Class Twenty-One are impaired. The Holders of interests in Class Twenty-One – Lorri O'Brien, Paul O'Brien, and AKR – shall retain their current equity interests in the Debtor, but there shall be no distributions with respect to such interests until the Claims in Class Twenty are paid in full in accordance with the terms of the Plan, and provided that the Debtor is not in default of its obligations to the Claimants in Classes One through Nineteen.

## ARTICLE IV
### Interests to be Retained and Rights to be Exercised by the Debtor

<u>Preservation of All Post-Confirmation Causes of Action</u>. Except as otherwise provided in the Plan, or in any contract, instrument, release or agreement entered into in connection with the Plan, in accordance with § 1123(b), the Debtor and the Estate retain and preserve and shall be vested with, retain, and may enforce and prosecute any claims or Post-Confirmation Causes of Action that the Debtor or the Estate may have against any person or entity that constitute Post-Confirmation Causes of Action. The Debtor shall have standing as a representative of the Estate for the purposes of investigating, pursuing, prosecuting, settling, collecting, liquidating, and/or recovering any assets, claims or causes of action that constitute Post-Confirmation Causes of Action.

**ARTICLE V**
**Provisions Affecting All Creditors; Means of Execution of the Plan**

5.1     Financing of the Plan Obligations.  The payments required under the Plan shall be made primarily from the following sources: (a) the proceeds generated from the operation of the Real Property; and (b) proceeds of any Post-Confirmation Causes of Action and Claims which the Debtor and/or the Estate have brought and/or may elect to bring, including without limitation, any proceeds of such Post-Confirmation Causes of Action.  In the event the Debtor sells or refinances all of the Real Property, the proceeds from such sale or refinancing (after accounting for the costs and expenses associated with the sale) shall be distributed in accordance with the treatment of Claims under the Plan in full and final satisfaction of the Debtor's obligations under the Plan.  In the event the Debtor sells or refinances less than all of the Real Property, the proceeds (after accounting for the costs and expenses associated with the sale) shall first be used to satisfy the Allowed Secured Claims secured by that specific property which is the subject of the sale or refinancing.  The remaining proceeds, if any, shall be used to fund Unclassified Claims first, then Allowed Claims in Class Twenty, with the remaining amounts, if any, being distributed to Claimants in Class Twenty-One.

5.2     Manner of Distribution.  Any distributions under the Plan may be made either in Cash, by check drawn on a domestic bank or by wire transfer (or by any manner agreed to between the Debtor and the Holder of an Allowed Claim) and shall be made in United States Funds.  Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan.  Cash will be issued to Holders entitled to receive a distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).

5.3     De Minimis Distributions.  "De Minimus Distributions" shall refer to any distribution of less than Twenty Dollars (**$20.00**).  All De Minimis Distributions will be held by

the Debtor for the benefit of the Holders of Allowed Claims entitled to De Minimis Distributions. When the aggregate amount of De Minimis Distributions exceeds Fifty Dollars (**$50.00**), the Debtor will distribute such De Minimis Distributions to such Holder of the Allowed Claim. If, at the time that the final distribution under the Plan is to be made, the De Minimis Distributions total less than Fifty Dollars (**$50.00**), such funds shall not be distributed to such Holder of the Allowed Claim, but rather, shall vest in the Estate and be distributed to other Holders of Allowed Claims in accordance with the terms of the Plan.

       5.4    <u>Delivery of Distributions</u>. Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made by the Debtor: (i) at the addresses set forth on the proofs of claim filed by such Holders (or at the last known addresses of such Holder if no motion requesting payment or proof of claim is filed or the Debtor has been notified in writing of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related proof of claim; or (iii) at the addresses reflected in the schedules filed by the Debtor if no proof of claim has been filed and the Debtor has not received a written notice of a change of address.

       5.5    <u>Undeliverable Distributions</u>. If payment or distribution to any Holder of an Allowed Claim under the Plan is returned for lack of a current address for the Holder or otherwise, the Debtor shall file with the Bankruptcy Court the name, if known, and last known address of the Holder and the reason for its inability to make payment. If, after the passage of ninety (90) days, the payment or distribution still cannot be made, the payment or distribution and any further payment or distribution to the Holder shall be distributed to the Holders in the appropriate Class or Classes, and the Allowed Claim shall be deemed satisfied to the same extent as if payment or distribution had been made to the Holder of the Allowed Claim.

5.6     Time Bar to Cash Payments.   Checks issued by the Debtor in respect of distributions to Holders of Allowed Claims pursuant to this Plan will be null and void if not cashed within one hundred twenty (120) days of the date of their issuance.   Requests for reissuance of any check shall be made to the Debtor by the Holder of the Allowed Claim with respect to which the check originally was issued.   Any Claim in respect of such a voided check must be made on or before six (6) months after the date of issuance of the check.   After that date, all Claims in respect of void checks will be discharged and forever barred and the Cash, including interest earned thereon, if any, shall be treated as an additional recovery of proceeds for distribution as of the date of expiration of said six (6) month period and thereafter shall be held and distributed in accordance with the terms of the Plan.

5.7     Plan Defaults.   In the event any party claims that the Debtor is in default of any obligation of the Debtor under the terms of the Plan, including any claim that the Debtor failed to make any payment required by the terms of the Plan, such party shall provide the Debtor with written notice setting forth, in specific terms, the alleged default.   The Debtor shall have fifteen (15) business days to respond or cure the default.   In the event the Debtor fails to respond or cure the default within the fifteen (15) business day period, the party claiming the default shall be free to exercise its rights and remedies against the Debtor under the Plan.

5.8     Setoffs and Recoupments.   The Debtor may, pursuant to §§ 502(h), 553, and 558, or applicable non-bankruptcy law, but shall not be required to, offset against or recoup from any Claim on which payments are to be made pursuant to the Plan, any claims or Post-Confirmation Causes of Action of any nature whatsoever that are proven valid that the Debtor may have against the Holder of such Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtor

or the Estate of any right of offset or recoupment that the Debtor or the Estate may have against the Holder of such Claim, nor of any other claim or Post-Confirmation Cause of Action.

5.9     <u>Distributions in Satisfaction; Allocation</u>.   Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and interests in the Debtor and the Estate and the Assets of the Debtor and the Estate, whether known or unknown, arising or existing prior to the Effective Date.

5.10     <u>Cancellation of Notes and Instruments</u>.   As of the Effective Date, except to the extent otherwise provided herein, all notes, agreements and securities evidencing Claims and interests and the rights thereunder of the Holders thereof shall, with respect to the Debtor, be canceled and deemed null and void and of no further force and effect, and the Holders thereof shall have no rights against the Debtor or the Estate, and such instruments shall evidence no such rights, except the right to receive the distributions provided for in the Plan.

5.11     <u>No Interest on Claims</u>.   Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtor and a Holder of a Claim and approved by an order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  In addition, and without limiting the foregoing, interest shall not accrue on or be paid on any claim which is not an Allowed Claim (a "<u>Disputed Claim</u>") in respect of the period from the Confirmation Date to the date the first distribution is made when and if such Disputed Claim becomes an Allowed Claim.  No payments shall be made to the holder of a Disputed Claim until such time as the Disputed Claim becomes an Allowed Claim at

which time the Debtor shall begin to make payments to the Holder of the Allowed Claim from the date the Disputed Claim is deemed an Allowed Claim in accordance with the terms of the Plan.

5.12    Cram Down.  In the event that any class allowed to vote is deemed impaired under the Plan and refuses to accept the terms of the Plan, the Debtor shall move the Bankruptcy Court to confirm the Plan pursuant to § 1129(b).  All Claims of creditors and the rights of all holders of equity interests in the Debtor shall be satisfied solely in accordance with the Plan.

### ARTICLE VI
### Claims and Interests

6.1    Pre-petition Claims and Amendments.  Each Claim as to which a proof of claim is required to be filed on or before the Bar Date and as to which a proof of claim was not filed on or before the Bar Date shall not under any circumstances become an Allowed Claim.  In no event shall the Allowed Amount of any Claim against the Debtor exceed the amount set forth in a proof of claim therefore filed on or before the Bar Date unless the claimant in its proof of claim expressly reserved the right to amend such proof of claim in which case any such amended proof of claim must be filed by the Confirmation Date.  No order allowing or disallowing a Claim may be reconsidered, pursuant to § 502(j) or otherwise, so as to increase the Allowed Amount thereof after entry of the Confirmation Order.

6.2    Objections to Claims and Interests.  Any and all claims and interests, other than Post-Petition Claims, which have not been scheduled by the Debtor as contingent, unliquidated or disputed, or as to which a valid proof of claim or interest has been filed on or before the Bar Date, shall be allowed in full, unless an objection to such Claim or interest is filed on or before the Claims Objection Date.  Claims that have been objected to and not allowed shall have no

right to vote with respect to the acceptance or rejection of this Plan, except as otherwise ordered by the Bankruptcy Court.

6.3     Bar Date for Objection to Post-Petition Claims.  Any Claim entitled to priority under § 507(a)(2) arising before the Confirmation Date and still outstanding sixty (60) days thereafter shall be forever barred unless it is the subject of a proof of claim (or, in the case of a Claim for Professional Fees and Expenses, an application for compensation) filed with the Bankruptcy Court on or before the Post-Petition Bar Date.  Any Claim that is the subject of such proof of claim (or application for compensation) shall be Allowed in full unless an objection thereto is filed within thirty (30) days after the Post-Petition Bar Date or such other date as is provided by order upon motion of the Debtor, except that Claims for Professional Fees and Expenses shall be Allowed only by order of the Bankruptcy Court.

## ARTICLE VII
## Executory Contracts and Unexpired Leases

7.1     Assumption/Rejection of Certain Executory Contracts and Unexpired Leases. Under the Plan, unless an executory contract or unexpired lease is specifically assumed under the Plan, or is the subject of a motion to assume the contract or lease and the motion is pending as of the Confirmation Date or is otherwise dealt with by an order of the Bankruptcy Court entered on or prior to the Confirmation Date, any and all executory contracts and unexpired leases of the Debtor shall be deemed rejected as of the Confirmation Date, if not earlier rejected by other orders of the Bankruptcy Court.  The non-Debtor party to any such rejected contract or lease shall be required to assert a Claim for damages from such rejection in accordance with Article VII, § 7.2 of the Plan.

7.2     Damages.  Any Claim for damages arising from the rejection or deemed rejection of an executory contract or unexpired lease must be filed on or before forty-five (45) days after

the date of the rejection date, or by such other date as may be specified by order of the Bankruptcy Court and, if not so filed, will be deemed disallowed, discharged, and forever barred from receiving any distribution under this Plan. All Allowed Claims arising from the rejection of executory contracts and unexpired leases shall be classified as Allowed Unsecured Claims in Class Twenty of the Plan.

## ARTICLE VIII
## Effect of Confirmation

8.1     <u>Discharge</u>.  To the fullest extent allowable under the Bankruptcy Code, and except as expressly provided otherwise in the Plan, the Debtor shall, as of the Confirmation Date, have the full benefit of the discharge provided by § 1141(d).  Without limiting the generality of the foregoing, and except as provided in the Plan, the Debtor shall be permanently released and discharged from all Claims, and all other Liens, Claims, Encumbrances, and debts that arose before the Confirmation Date whether or not any such Lien, Claim, Encumbrance or debt has been scheduled by the Debtor, a proof of claim has been filed or deemed filed, any such Claim is Allowed, or the Holder of any such Claim has accepted the Plan; <u>provided</u>, <u>however</u>, that nothing herein shall release or discharge the Debtor with respect to its obligations to make the payments and to provide the other consideration which is described in this Plan.

8.2     <u>Injunction</u>. Except as otherwise expressly provided in this Plan, the documents executed pursuant to this Plan, or the Confirmation Order, on and after the Confirmation Date, all persons and entities who have held, currently hold, or may hold Claims against or interests in the Debtor, the Assets, or the Estate that arose prior to the Confirmation Date (including, but not limited to, states and other governmental units, and any state official, employee, or other entity acting in an individual or official capacity on behalf of any state or other governmental units) are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly,

any action or other proceeding against the Debtor or any Assets of the Debtor; (ii) enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against the Debtor or any Assets of the Debtor; (iii) creating, perfecting, or enforcing, directly or indirectly, any Lien or Encumbrance of any kind against the Debtor or any Assets of the Debtor; (iv) asserting or effecting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against obligations due to the Debtor or any Assets of the Debtor; and (v) acting, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with any provisions of this Plan. Any person or entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in this Article VIII shall prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of the Debtor under this Plan. The Confirmation Order shall also constitute an injunction enjoining any person from enforcing or attempting to enforce any Claim or cause of action against the Debtor or any Assets of the Debtor based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Claim on which the payments due under this Plan have been made or are not yet due under this Plan.

8.3     Term of Injunctions.  Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case by orders of the Bankruptcy

Court, under §§ 105 or 362, this Plan, or otherwise, and extant on the Confirmation Date, shall

remain in full force and effect until the entry of the Confirmation Order.

### ARTICLE IX
### Retention of Jurisdiction

To the maximum extent permitted by 28 U.S.C. § 1334 and the Bankruptcy Code, the

Debtor has requested that the Bankruptcy Court retain jurisdiction with respect to the following

matters:

(a)     To adjudicate all controversies concerning the classification, allowance, or determination of any Claim or interest, including, without limitation, any Administrative Claim or Claim arising from any environmental liability;

(b)     To hear and determine all Claims arising from rejection of any executory contract or unexpired lease and to consummate the rejection and termination thereof;

(c)     To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

(d)     To adjudicate all Claims to, or ownership of any Assets of, the Debtor or in any proceeds thereof arising prior to and after the Effective Date;

(e)     To adjudicate all Claims and controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor prior to the Effective Date;

(f)     To make such orders as are necessary and appropriate to construe or effectuate the provisions of the Plan;

(g)     To hear and determine any and all Post-Confirmation Causes of Action;

(h)     To hear and determine any and all applications of professional persons for allowance of compensation and/or reimbursement of Professional Fees and Expenses and all other Administrative Claims which may be pending on, or made after, the Confirmation Date;

(i)     To adjudicate any and all motions, adversary proceedings and litigated matters pending on the Confirmation Date or filed thereafter within any applicable statutory period;

(j)     To adjudicate any and all controversies and disputes arising under, or in connection with, the Plan or any order or document entered or approved by the Bankruptcy Court in connection with the Debtor, the Case, or any controversy or

dispute which may affect the Debtor's ability to implement or fund the Plan; and

(k)     To hear and determine such other matters as the Bankruptcy Court in its reasonable discretion shall deem appropriate.

## ARTICLE X
## General Provisions

10.1    <u>Construction</u>.  The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of this Plan nor in any manner affect the terms, provisions or interpretation of this Plan.  Wherever used, the singular shall include the plural, and the plural the singular.

10.2    <u>Severability</u>.  Should any term or provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

10.3    <u>Controlling Documents</u>.  In the event and to the extent that any provision of this Plan (or any exhibit annexed hereto) is inconsistent with the provisions of the Disclosure Statement or any other agreement, document or instrument required or contemplated to be executed pursuant to this Plan, the provisions of this Plan shall control and take precedence.

10.4    <u>Exculpation</u>.  Neither the Debtor, nor any of its respective attorneys, consultants, advisors, and agents (acting in such capacity), shall have or incur any liability to any entity for any act taken or omitted to be taken in the formulation, preparation, dissemination, implementation, confirmation, or approval of the Plan, the Disclosure Statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; <u>provided</u>, <u>however</u>, that the provisions of this section shall not affect the liability of any entity that otherwise would result from any such act or omission to the extent that such act or omission

30

is determined in a Final Order to have constituted gross negligence, willful misconduct or breach of fiduciary duty. Any of the forgoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

10.5    <u>Governing Law</u>. Except to the extent that the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or other controlling federal statutes or laws, are applicable, the rights and obligations arising under this Plan and any documents, instruments or agreements executed in connection with this Plan (except as otherwise indicated in such documents, instruments and agreements), shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Maine.

10.6    <u>Binding Effect</u>. Except as otherwise provided in § 1141(d)(3), on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or interest in, the Debtor and its respective successors and assigns, whether or not the Claim or interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan. The rights, benefits and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity (including, but not limited to, any trustee appointed for the Debtor under chapters 7 or 11 of the Bankruptcy Code).

10.7    <u>Debtor's Assets</u>. On and after the Confirmation Date, and subject to compliance with the terms of this Plan, the Debtor may, without further approval of the Bankruptcy Court, use, sell, assign, transfer, abandon, settle, or otherwise dispose of at a public or private sale any of the Debtor's Assets for the purpose of liquidating and converting such Assets to Cash, making distributions, and fully consummating the Plan.

10.8    Exemption from Transfer Taxes.    Pursuant to § 1146(a), the assignment or surrender of any leases or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the execution, delivery and recording of any deed relating to the Real Property, and any other deeds, bills of sale or assignment executed in connection with any disposition of Assets under, in furtherance of, or in connection with the Plan shall not be subject to any tax to the fullest extent allowed under § 1146.

10.9    Further Assurances and Cooperation.    The Debtor, and each person required or contemplated by this Plan to execute and deliver a written instrument, agreement or document, shall execute and deliver such instrument, agreement or document in form and substance satisfactory to the Debtor, and shall perform all other and further reasonable acts requested by the Debtor, in order to permit the purposes and intents of this Plan to be consummated.

10.10    Closing of Case.    The Case shall be deemed closed at such time as the order closing the Case pursuant to § 350 has been entered by the Bankruptcy Court on the motion of the Debtor, and the order becomes a Final Order.

10.11    Management Post-Confirmation.    Upon confirmation of the Plan, Lorri O'Brien, as the manager of the Debtor under the terms of the Debtor's operating agreement, shall continue operate the Assets of the Debtor on a day to day basis, which may involve the assistance of RBS.

## ARTICLE XI
## Modification of the Plan

The Debtor may propose amendments or modifications of this Plan, including any of the exhibits attached to this Plan, at any time prior to the entry of the Confirmation Order, with approval of the Bankruptcy Court and upon notice to creditors or to such parties as may be directed by the Bankruptcy Court.  After entry of the Confirmation Order and prior to Substantial

Consummation, the Debtor may, with approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in this Plan, or in the Confirmation Order, in such manner as may be necessary to carry out and implement the purposes and intents of this Plan. Following Substantial Consummation, modification of the Plan shall be permitted only to the extent allowed by the Bankruptcy Court after notice and hearing as the Bankruptcy Court shall determine appropriate.

## ARTICLE XII
### Conditions Precedent to Effective Date

The Plan shall not become effective, and the Effective Date shall not occur, unless and until the Confirmation Order shall have been entered by the Bankruptcy Court and shall have become a Final Order.

Respectfully submitted,

**LAO PROPERTIES, LLC**

DATED: March 2, 2012          By: /s/ *Lorri A. O'Brien*
                              Its Manager


DATED: March 2, 2012          /s/ *D. Sam Anderson*
                              D. Sam Anderson, Esq.
                              Jeremy R. Fischer, Esq.
                              BERNSTEIN, SHUR, SAWYER & NELSON, P.A.
                              100 Middle Street, P.O. Box 9729
                              Portland, Maine 04104-5029
                              Telephone: (207) 774-1200
                              sanderson@bernsteinshur.com

**EXHIBIT A***
**Annual Budget**
**2012**

| | 9 Kendall Road | 2 Beach St. U. 2 & 5 | 31 Ocean Ave. | 48 Broadway | 83 Ocean Ave. | 80 Ocean | 3 Ravine Ave. | 67 Ocean Ave. | 2 Beach St. U. 3 | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|
| Gross Revenues | $ 65,300.00 | $ 24,000.00 | $ 69,000.00 | $ 26,000.00 | $ 104,500.00 | $ 116,000.00 | $ 35,000.00 | $ 75,000.00 | $ 14,400.00 | $ 529,200.00 |
| | | | | | | | | | | |
| Commission | $ 6,530.00 | $ - | $ 6,900.00 | $ 2,600.00 | $ 10,450.00 | $ 11,600.00 | $ 3,500.00 | $ - | $ - | $ 41,580.00 |
| Condominium Fees | $ - | $ 2,960.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ 1,820.00 | $ 4,780.00 |
| Insurance | $ 1,947.00 | $ - | $ 4,213.00 | $ 2,671.80 | $ 2,466.00 | $ 2,590.00 | $ 2,001.00 | $ 1,130.00 | $ - | $ 17,018.80 |
| Accounting Fees | $ 660.00 | $ 600.00 | $ 660.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 5,520.00 |
| Property Taxes | $ 6,721.68 | $ 3,814.80 | $ 7,708.20 | $ 3,896.16 | $ 8,814.24 | $ 11,636.00 | $ 4,118.64 | $ 8,419.08 | $ 1,849.08 | $ 56,978.48 |
| Repairs/Maintenance | $ 3,265.00 | $ - | $ 3,450.00 | $ 1,300.00 | $ 5,225.00 | $ 5,800.00 | $ 1,750.00 | $ 3,750.00 | $ - | $ 24,540.00 |
| Heat | $ 4,000.00 | $ - | $ 500.00 | $ 500.00 | $ 1,200.00 | $ 2,500.00 | $ - | $ - | $ - | $ 8,700.00 |
| Utilities | $ 6,502.54 | $ - | $ 7,025.70 | $ 1,601.29 | $ 2,466.79 | $ 5,504.66 | $ 547.58 | $ - | $ - | $ 23,648.56 |
| | | | | | | | | | | |
| TOTAL EXPENSES | $ 29,626.22 | $ 7,374.80 | $ 30,456.90 | $ 13,169.25 | $ 31,222.03 | $ 40,230.66 | $ 12,517.22 | $ 13,899.68 | $ 4,269.08 | $ 182,765.84 |
| NET/BEFORE D.S. | $ 35,673.78 | $ 16,625.20 | $ 38,543.10 | $ 12,830.75 | $ 73,277.97 | $ 75,769.34 | $ 22,482.78 | $ 61,100.32 | $ 10,130.92 | $ 346,434.16 |
| DEBT SERVICE | $ 25,856.40 | $ 7,868.88 | $ 53,949.96 | $ 16,911.24 | $ 43,448.16 | $ 90,999.96 | $ 21,730.08 | $ 54,015.00 | $ 5,131.92 | $ 319,911.60 |
| NET/AFTER D.S. | $ 9,817.38 | $ 8,756.32 | $ (15,406.86) | $ (4,080.49) | $ 29,829.81 | $ (15,230.62) | $ 752.70 | $ 7,085.32 | $ 4,999.00 | $ 26,522.56 |

*Nothing herein shall alter or abridge the Debtor's rights and benefits under the Plan, as amended by the Confirmation Order.